**E-FILED**
Wednesday, 28 February, 2007  05:21:50 PM
Clerk, U.S. District Court, ILCD

AO 240  (1/94)

# United States District Court

### DISTRICT OF

*FILED*

*FEB 2 8 2007*

*JOHN M. WATERS, Clerk*
*U.S. DISTRICT COURT*
*CENTRAL DISTRICT OF ILLINOIS*

Plaintiff

**v.**

Defendant

**APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES AND AFFIDAVIT**

CASE NUMBER: _07-3062_

I, _ANDRE HUNTER_ declare that I am the (check appropriate box)

☒ petitioner/plaintiff/movant          ☐ other

in the above-entitled proceeding; that in support of my request to proceed without prepayment of fees or costs under 28 USC. §1915 I declare that I am unable to pay the costs of these proceedings and that I am entitled to the relief sought in the complaint/petition/motion.

In support of this application, I answer the following questions under penalty of perjury:

1. Are you currently incarcerated?:     ☒ Yes     ☐ No     (If "No" go to Part 2)

    If "Yes" state the place of your incarceration _ILLINOIS RIVER CORRECTIONAL CENTER_

    Are you employed at the institution? _YES_   Do you receive any payment from the institution? _YES_

    Have the institution fill out the Certificate portion of this affidavit and attach a ledger sheet from the institution(s) of your incarceration showing at least the past **six** months' transactions.

2. Are you currently employed?     ☒ Yes     ☐ No

    a.  If the answer is "Yes" state the amount of your take-home salary or wages and pay period and give the name and address of your employer.

    _BETWEEN $205-255 PER MONTH, Illinois Corrections Industries Bakery, ILLINOIS RIVER CORRECTION CENTER_

    b.  if the answer is "No" state the date of your last employment, the amount of your take-home salary or wages and pay period and the name and address of your last employer.

3. In the past 12 twelve months have your received any money from any of the following sources?

    a.  Business, profession or other self-employment     ☐ Yes     ☒ No
    b.  Rent payments, interest or dividends     ☐ Yes     ☒ No
    c.  Pensions, annuities or life insurance payments     ☐ Yes     ☒ No
    d.  Disability or workers compensation payments     ☐ Yes     ☒ No
    e.  Gifts or inheritances     ☐ Yes     ☒ No
    f.  Any other sources     ☒ Yes     ☐ No _SEE PRISON LEDGER_

    If the answer to any of the above is "Yes" describe each source of money and state the amount received **and**
    what you expect you will continue to receive.

4. Do you have any cash or checking or savings accounts?    ☒ Yes    ☐ No

   If "Yes" state the total amount.  _1,037.18_

5. Do you own any real estate, stocks, bonds, securities, other financial instruments, automobiles or other valuable property?    ☐ Yes    ☒ No

   If "Yes" describe the property and state its value.

6. List the persons who are dependent on you for support, state your relationship to each person and indicate how much you contribute to their support.

I declare under penalty of perjury that the above information is true and correct.

_11-7-06_
**DATE**

_Andre Hunter_
**SIGNATURE OF APPLICANT**

# CERTIFICATE

### (Incarcerated applicants only)
### (To be completed by the institution of incarceration)

I certify that the applicant named herein has the sum of $ _251.73_ on account to his/her

credit at (name of institution) __ILLINOIS RIVER CORRECTIONAL CENTER__    I further certify

that the applicant has the following securities to his/her credit: _SAVINGS ACCOUNT AT FIRST FEDERAL BANK,_

_BUSHNELL, IL.  $1,135.00_  . I further certify that during the past six months the applicant's

average balance was $ _SEE ATTACHED STATEMENT_  .

_DECEMBER 26, 2006_
**DATE**

_Mark A. Pirtle_
**SIGNATURE OF AUTHORIZED OFFICER**

MARK A. PIRTLE
BUSINESS ADMINISTRATOR

072662-HAB-BGC   Page 3 of 36

Illinois River Correctional Center
Trust Fund

Inmate Transaction Statement

REPORT CRITERIA  -  Date: 06/01/2006 thru End;     Inmate: R01100;     Active Status Only ? : No;     Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;     Print Furloughs / Restitutions ? : Yes;     Include Inmate Totals ? : Yes;     Print
Balance Errors Only ? : No

### Inmate: R01100 Hunter, Andre M.                    Housing Unit: IRI-01-B -23

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| | | | | | **Beginning Balance:** | | 52.69 |
| 06/05/06 | Point of Sale | 60 Commissary | 156751 | 375433 | Commissary | -22.33 | 30.36 |
| 06/07/06 | Payroll | 20 Payroll Adjustment | 158112 | | ICI P/R 05/2006 | 247.37 | 277.73 |
| 06/09/06 | Disbursements | 88 Savings Account | 160316 | Chk #102390 | 45217, First Federal Bank F.S.,     Inv. Date: 06/09/2006 | -150.00 | 127.73 |
| 06/09/06 | Disbursements | 88 Expenses | 160316 | Chk #102395 | 45221, Exum, Cynthia,     Inv. Date: 06/09/2006 | -50.00 | 77.73 |
| 06/12/06 | Disbursements | 84 Library | 163312 | Chk #102412 | 44821, DOC: Library Copies,     Inv. Date: 06/02/2006 | -.30 | 77.43 |
| 06/16/06 | Point of Sale | 60 Commissary | 167723 | 376930 | Commissary | -75.10 | 2.33 |
| 06/30/06 | Disbursements | 90 Medical Co-Pay | 181312 | Chk #102889 | 45667, DOC: 523 Fund Reimburse, Inv. Date: 06/14/2006 | -2.00 | .33 |
| 07/07/06 | Payroll | 20 Payroll Adjustment | 188112 | | ICI P/R 06/2006 | 280.00 | 280.33 |
| 07/12/06 | Mail Room | 01 MO/Checks (Not Held) | 193232 | 08207963414 | Hunter, N | 50.00 | 330.33 |
| 07/13/06 | Disbursements | 88 Savings | 194312 | Chk #103087 | 47389, First Federal Bank F.S.,     Inv. Date: 07/13/2006 | -100.00 | 230.33 |
| 07/14/06 | Point of Sale | 60 Commissary | 195751 | 379742 | Commissary | -154.60 | 75.73 |
| 07/19/06 | Mail Room | 01 MO/Checks (Not Held) | 200232 | 08205440016 | Hunter, N | 25.00 | 100.73 |
| 07/26/06 | Point of Sale | 60 Commissary | 207702 | 381433 | Commissary | -38.81 | 61.92 |
| 07/31/06 | Disbursements | 88 Lower Partial | 212312 | Chk #103456 | 1725, Wexford Health Sources,     Inv. Date: 07/31/2006 | -53.72 | 8.20 |
| 08/04/06 | Payroll | 20 Payroll Adjustment | 216112 | | ICI P/R 07/2006 | 256.83 | 265.03 |
| 08/09/06 | Point of Sale | 60 Commissary | 221751 | 382760 | Commissary | -113.87 | 151.16 |
| 08/22/06 | Disbursements | 88 Savings | 234312 | Chk #103919 | 2975, First Federal Bank F.S.B., Inv. Date: 08/22/2006 | -100.00 | 51.16 |
| 08/31/06 | Mail Room | 01 MO/Checks (Not Held) | 243232 | 08207967971 | Hunter, Nolia | 50.00 | 101.16 |
| 09/06/06 | Point of Sale | 60 Commissary | 249751 | 385889 | Commissary | -92.57 | 8.59 |
| 09/08/06 | Payroll | 20 Payroll Adjustment | 251112 | | ICI P/R 08/2006 | 247.37 | 255.96 |
| 09/15/06 | Mail Room | 01 MO/Checks (Not Held) | 258232 | 09644621556 | Exum, Cynthia | 50.00 | 305.96 |
| 09/15/06 | Mail Room | 01 MO/Checks (Not Held) | 258232 | 09644621545 | Exum, Cynthia | 50.00 | 355.96 |
| 09/19/06 | Point of Sale | 60 Commissary | 262723 | 387179 | Commissary | -145.00 | 210.96 |
| 09/26/06 | Mail Room | 01 MO/Checks (Not Held) | 269232 | 08960333681 | Hunter, Noria | 25.00 | 235.96 |
| 09/29/06 | Disbursements | 90 Medical Co-Pay | 272312 | Chk #104597 | 4860, DOC: 523 Fund Reimbursem, Inv. Date: 09/19/2006 | -2.00 | 233.96 |
| 10/03/06 | Disbursements | 88 Headphone Repair | 276312 | Chk #104626 | 5564, Koss Corporation,     Inv. Date: 10/03/2006 | -6.00 | 227.96 |
| 10/03/06 | Point of Sale | 60 Commissary | 276751 | 388791 | Commissary | -32.05 | 195.91 |
| 10/06/06 | Payroll | 20 Payroll Adjustment | 279112 | | ICI P/R 09/2006 | 257.07 | 452.98 |
| 10/13/06 | Disbursements | 80 Postage | 286312 | Chk #104853 | 5564, DOC: 523 Fund Reimbursem, Inv. Date: 10/04/2006 | -3.95 | 449.03 |
| 10/20/06 | Point of Sale | 60 Commissary | 293723 | 390158 | Commissary | -97.45 | 351.58 |
| 10/20/06 | Point of Sale | 60 Commissary | 293723 | 390164 | Commissary | -2.69 | 348.89 |
| 10/25/06 | Disbursements | 90 Medical Co-Pay | 298312 | Chk #105029 | 6682, DOC: 523 Fund Reimbursem, Inv. Date: 10/18/2006 | -2.00 | 346.89 |
| 10/25/06 | Disbursements | 88 Savings | 298312 | Chk #105030 | 7021, First Federal Bank F.S.B., Inv. Date: 10/25/2006 | -285.00 | 61.89 |
| 10/25/06 | Disbursements | 88 Miscellaneous Payables | 298312 | Chk #105041 | 7032, Now Playing,     Inv. Date: 10/25/2006 | -11.95 | 49.94 |
| 10/31/06 | Mail Room | 01 MO/Checks (Not Held) | 304232 | 08960338675 | Hunter, N | 50.00 | 99.94 |
| 11/02/06 | Point of Sale | 60 Commissary | 306723 | 391812 | Commissary | -45.30 | 54.64 |
| 11/02/06 | AP Correction | 88 Headphone Repair | 306512 | Chk #104626 Voided | 5564 - Koss Corporation | 6.00 | 60.64 |
| 11/09/06 | Payroll | 20 Payroll Adjustment | 313112 | | ICI P/R 10/2006 | 257.07 | 317.71 |
| 11/16/06 | Point of Sale | 60 Commissary | 320702 | 393186 | Commissary | -143.59 | 174.12 |
| 11/17/06 | Disbursements | 80 Postage | 321312 | Chk #105481 | 8159, DOC: 523 Fund Reimbursem, Inv. Date: 11/14/2006 | -3.27 | 170.85 |

# Illinois River Correctional Center
## Trust Fund
### Inmate Transaction Statement

REPORT CRITERIA - Date: 06/01/2006 thru End;    Inmate: R01100;    Active Status Only ? : No;    Print Restrictions ? : Yes;
Transaction Type: All Transaction Types;    Print Furloughs / Restitutions ? : Yes;    Include Inmate Totals ? : Yes;    Print
Balance Errors Only ? : No

**Inmate: R01100 Hunter, Andre M.**         **Housing Unit: IRI-01-B -23**

| Date | Source | Transaction Type | Batch | Reference # | Description | Amount | Balance |
|------|--------|------------------|-------|-------------|-------------|--------|---------|
| 11/28/06 | Mail Room | 01 MO/Checks (Not Held) | 332232 | 08207972662 | Hunter, Nolia | 50.00 | 220.85 |
| 12/05/06 | Point of Sale | 60 Commissary | 339751 | 394813 | Commissary | -90.64 | 130.21 |
| 12/06/06 | Mail Room | 01 MO/Checks (Not Held) | 340232 | 09243728370 | Hunter, Nolia | 50.00 | 180.21 |
| 12/07/06 | Payroll | 20 Payroll Adjustment | 341112 | | ICI P/R 11/2006 | 296.58 | 476.79 |
| 12/13/06 | Point of Sale | 60 Commissary | 347723 | 396061 | Commissary | -136.07 | 340.72 |
| 12/14/06 | Disbursements | 84 Library | 348316 | Chk #106057 | 9306, DOC: 523 Fund Library,   Inv. Date: 12/05/2006 | -.50 | 340.22 |
| 12/21/06 | Mail Room | 01 MO/Checks (Not Held) | 355232 | 10054777094 | Exum, Cynthia | 50.00 | 390.22 |
| 12/26/06 | Mail Room | 01 MO/Checks (Not Held) | 360232 | 09243731733 | Hunter, Nolia | 50.00 | 440.22 |
| 12/26/06 | Disbursements | 88 Miscellaneous Payables | 360312 | Chk #106340 | 10549, Movies Unlimited,   Inv. Date: 12/26/2006 | -188.49 | 251.73 |

|  |  |
|---|---|
| **Total Inmate Funds:** | 251.73 |
| **Less Funds Held For Orders:** | .00 |
| **Less Funds Restricted:** | .00 |
| **Funds Available:** | 251.73 |
| **Total Furloughs:** | .00 |
| **Total Voluntary Restitutions:** | .00 |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANDRE HUNTER,                    )
Plaintiff,                       )
                                 )
                                 )
                                 )           CASE NO._____
                                 )
vs. Dr. Ben Awada, Dr. Graciela  )
Grammer, Dr. Seth Osafa, Dr.     )           JURY TRIAL DEMANDED
Willard Elyea, Barbara Hurt,     )
Roger Walker, Terri Anderson,    )
Sherry Benton, Karen Harper,     )
Donald Hulick,Wexford Health Sources Inc.,)
Kevin Kirkbride,                 )
Defendants.

COMPLAINT

PRELIMINARY STATEMENT

     This a civil rights action filed by Andre Hunter, a state
prisoner, for damages and injunctive relief under 42 U.S.C. §
1983, alleging denial of adequate medical care in violation of
the Eighth Amendment to the United States Constitution.

JURISDICTION

1)   This court has jurisdiction of the plaintiff's claims of
violation of federal constitutional rights under 42 U.S.C. §§
1331(a) and 1343.

2)   This district has jurisdiction because at least one of the
defendant's lives in this district.

PARTIES

3)   The plaintiff Andre Hunter, was incarcerated at Illinois
River Correctional Center during the events described in this
complaint.

4)   Defendant Dr. Ben Awada was a resident dentist at Illinois
River Correctional Center dental department at times relevant
to this complaint.

5)   Defendant Dr. Graciela Grammer was a dentist at Illinois
River Correctional Center dental department during times relevant
to this complaint.

6)   Defendant Seth Osafa was the medical director at Illinois
River C.C. at times relevant to this complaint.

7)   Defendant Wexford Health Sources Inc. was the health care
provider for Illinois Department of Corrections at times relevant
to this complaint.

-1-

8)   Defendant Willard  Elyea was the medical director for the Illinois Department of Corrections at times relevant to this complaint.

9)   Defendant Roger Walker was the Director of the Illinois Department of Corrections at times relevant  to this complaint.

10)  Defendant Barbara Hurt was the Deputy Director of District #2 at times relevant to this complaint.

11)  Defendant Terri Anderson was a member of the Administrative Review Board at times relevant to this complaint.

12)  Defendant Sherri Benton was a member of the Administrative Review Board at times relevant to this complaint.

13)  Defendant Karen Harper worked in the Illinois River dental department  at times relevant to this complaint.

14)  Defendant Donald Hulick was the warden at Illinois River Correctional Center at times relevant to this complaint.

15)  Defendant Kevin Kirkbride was a grievance officer at Illinois River Correctional Center at times relevant to this complaint.

EXHAUSTION

16)  PLAINTIFF HAS EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES REGARDING THE MATTERS DESCRIBED IN THIS COMPLAINT.  COPIES OF PLAINTIFF'S GRIEVANCE AND APPEAL ARE ATTACHED  TO THIS COMPLAINT.

STATEMENT OF CLAIMS

PLACE OF OCCURENCE: Illinois River Correctional Center

DATE OF OCCURENCE(S): 2000 - Present

WITNESSES TO OCCURENCE(S): Listed in this complaint

FACTS

17)  In approximately 1998 the plaintiff had root canal treatment performed on #19 tooth. The last step in root canal treatment is to fabricate a replacement crown (also known as cap) and cover the tooth.  The plaintiff has not had a replacement crown fabricated for #19 tooth. This caused the plaintiff's #19 tooth to deteriorate at a slow and, at times, immensely painful rate.

18)  While incarcerated at Illinois Department of Corrections the plaintiff was told by Dr. Awada that a crown was the proper course of action to relieve ailment which plaintiff suffered from, and save the #19 tooth.

19)  Plaintiff asked for crown and was informed by Dr. Awada that a crown would not be fabricated per I.D.O.C. policy.

20)  The plaintiff suffered from repeated perio abcesses caused
by deterioration of #19 tooth.

21)  The plaintiff suffered from headaches believed to be caused
by deterioration of #19 tooth.

22) The plaintiff experienced sleep deprivation due to  extreme
pain caused by deterioration of #19 tooth.

23)  The  plaintiff experienced changes in eating habits due
to extreme pain on lower left side of mouth caused by deterioration
of #19  tooth. The plaintiff experienced weight loss and fatigue
due to said change in eating habits.

24)  On 7/20/01 plaintiff told Dr. Grammer that #19 tooth "bothers
him sometimes."  Upon examination Dr. Grammer noted that plaintiff
had root canal treatment administered on #19 tooth and scheduled
operation to replace deteriorated filling.  Filling was replaced
on 10/16/01.

25)  On April 13, 2004 the plaintiff went to Illinois C.C. dental
department complaining of pain in #19 tooth.  Dr. Awada scheduled
a redo of #19 filling.

26)  On May 4, 2004, Dr. Awada operated on the plaintiff's #19
tooth, removing the old filling and decay. Dr. Awada replaced
the old filling with a new one  (MOD amalgam). Dr. Awada asked
the plaintiff how much time remained on his sentence.  The plaintiff
responded "almost four years."  Dr. Awada then told the plaintiff
that because of the large filling in the #19 tooth, the plaintiff
needs a crown or the tooth will continue to deteriorate.  The
plaintiff then asked for the crown and Dr. Awada told the plaintiff
a crown would not be fabricated because it was against I.D.O.C.
policy.  Dr. Awada told plaintiff he could either get tooth extracted
or keep on getting fillings until he can get out and get a crown.

27)  Approximately 10 months after plaintiff's #19 was refilled
MOD amalgam began chipping away and causing pain. On 6/1/05 the
plaintiff began dropping  dental request slips about every 10
days requesting remedy for disintegrating filling.

28)  On 7/21/05 plaintiff saw dentist for first time since pain
returned in #19 tooth.  Plaintiff asked Dr. Grammer what was
wrong with his tooth. Dr. Grammer spoke rather fast with heavy
accent so it was hard for plaintiff to understand her reply.
Plaintiff believes Dr. Grammer stated she did not know what was
causing the plaintiff's pain, but that #19 needed to be refilled.

29)  On 8/2/05 Dr. Grammer filled plaintiff's #19 tooth. Plaintiff
asked Dr. Grammer if this operation would fix tooth. Dr. Grammer
said she did not know.

30)  The filling plaintiff  received on 8/2/05 did not fit right
and prevented him from chewing properly. Plaintiff drank soupy

-3-

oatmeal and noodles because he could not chew.

31)  On 8/5/05 plaintiff told Dr. Awada that pain in #19 tooth
did not cease and the pain made chewing impossible.  Dr. Awada
informed plaintiff that filling on #19 tooth was too high and
proceeded to shave it down.  Dr. Awada told plaintiff he needed
a crown or he would lose #19 tooth. Plaintiff asked Dr. Awada
to fabricate crown to save #19 tooth. Dr. Awada once again told
plaintiff per I.D.O.C. policy, a crown would not be fabricated.
Dr. Awada then told plaintiff as long as he can "manage" pain,
he can continue to put off extraction and continue to receive
fillings.

32)  On 10/3/05 plaintiff noticed swelling along gumline on side of
#19 tooth and greater sensitivity.  Plaintiff began submitting
request slips about every 7 days complaining of pain and swelling.

33)  On 10/28/05 plaintiff had trouble sleeping due to pain from
#19 and surrounding gumline. Plaintiff signed up for sick call but was
told the dentist would not be back until 10/31/05. Plaintiff signed up
for sick call on the night of 10/30/05 and was refered to the dentist on
10/31/05.

34)  On 10/31/05 Dr. Awada examined #19 tooth along with X-ray. Dr. Awada
told plaintiff he had perio abcesses(localized collections of
pus, formed by tissue disintegration and surrounded by an inflamed
area) caused by furcation (gum) problems. Dr Awada told plaintiff
he desperately needed a crown to save tooth, however, I.D.O.C.
policy does not allow it. Dr. Awada prescribed antibiotic and
pain  reliever.

35)  In November 2005 plaintiff wrote letters to Deputy Director
Barbara Hurt, Director Roger Walker, Dr. Willard Eylea, and Wexford
Health Sources Inc. pointing out his ailment, the pain he was suffering,
and the unconstitutional policy in effect at I.R.C.C.

36)  On 11/15/05 plaintiff informed Dr. Awada that pain around
#19 tooth had not decreased since last visit. Perio abcesses
increased in size. Dr. Awada recommended extraction. Plaintiff
asked if tooth could be saved and Dr. Awada remarked " Yes,
if you were to receive a crown." Plaintiff declined extraction.
Dr. Awada prescribed antibiotics and pain reliever.

37)  On night of 11/18/05 plaintiff did not sleep due to excruciating
pain from #19 tooth and surrounding gumline. Plaintiff subsequently
went to sick call the following morning requesting immediate
remedy. Plaintiff was given Tylenol®

38)  On 11/21/05 plaintiff told Dr. Awada that antibiotic and
pain reliever had little effect and pain was still excruciating.
Dr. Awada again told plaintiff a crown was needed but is not
permitted per I.D.O.C. policy, and because the level of pain
was no longer "manageable" extraction was the only viable option.
Plaintiff agreed to extraction and asked that the operation be
performed immediately. Dr. Awada told plaintiff he could only

-4-

schedule an extraction, but could not say when operation would take place. Dr. Awada prescribed antibiotic and pain reliever.

39)  On 11/28/05, because level of pain had decreased and plaintiff did not want to be disfigured, he declined offer for extraction. Plaintiff was ordered by dental staff Karen Harper to sign refusal for extraction.

40)  On 12/30/05 plaintiff informed Dr. Awada that pain from #19 tooth was affecting eating habits and asked for crown. Plaintiff was once again given a choice by Dr. Awada to receive repeated fillings or extract tooth, since crown was not permitted per I.D.O.C. policy.

41)  On 1/3/06 plaintiff filed two grievances. The first was an emergency grievance concerning inadequate medical care plaintiff had received up to this point. The second grievance had to do with illegible medical records.

42)  On 1/9/06 Warden Donald Hulick determined plaintiff's grievance was not an emergency.

43)  On 2/2/06 Dr. Awada helped plaintiff decipher medical records.

44)  Around 2/25/06, after #19 filling fell completely out of his mouth, plaintiff began experiencing sharp headaches on left side of skull. Plaintiff believes these headaches were caused by #19 tooth and began submitting requests about every 7 days requesting adequate and effective treatment.

45)  On 3/7/06 Grievance Officer Kirkbride reviewed plaintiff's grievances and recommended they be denied. Plaintiff then forwarded medical treatment grievance to Administrative Review Board.

46)  In April, 2006 defendant Barbara Hurt responded to a second letter sent by plaintiff in March 2006, stating I.D.O.C. does not approve placement of crowns, so plaintiff's only recourse is extraction.

47)  On 3/24/06 plaintiff informed Dr. Awada of missing filling and headaches. Plaintiff asked Dr. Awada if crown could still save tooth. Dr. Awada told plaintiff he did need a crown but I.D.O.C. policy would not permit it. Dr. Awada once again told plaintiff if pain is "tolerable," tooth can be refilled until release, if not, then plaintiff can opt for extraction.

48)  On 4/5/06, after being informed of situation by plaintiff via certified mail, Dr. Eylea sent plaintiff a letter stating he had reviewed plaintiff's record with I.R.C.C. Health Care Unit Health Care Administrator (Dr. Seth Osafa) and together they concluded that plaintiff's dental care has been within reasonable standards.

49)  On April 7, 2006 Sherry Benton recommended that plaintiff's grievance be denied. This recommendation was concurred by Director Roger E. Walker Jr.(signature was initialled by Terri Anderson.)

50)  On 4/7/06 plaintiff, still missing filling, saw Dr. Awada
and complained of headaches believed to be caused by #19 tooth.
Dr. Awada informed plaintiff that situation had been evaluated
by Dr. Funk. Dr. Awada told plaintiff that he had been informed
a crown was an elective procedure. Dr. Awada gave plaintiff choice
between filling and extraction.

51)  On 4/21/06 plaintiff informed Dr. Awada that headaches had
subsided, but #19 tooth still ached and became increasingly irritated
when consuming food. Upon X-ray, Dr. Awada informed plaintiff
that because he did not have a crown covering #19 filling, food
particles would continue to get through cracks in tooth, causing
furcation(gum) problems.

52)  5/26/06, after submitting numerous request slips complaining
of varying degrees of pain from #19 tooth, plaintiff was call
passed by I.R.C.C. dental department and informed by Dr. Awada,
upon X-ray, that #19 tooth could not be saved and "no dentist
in the world would prescribe any restorative treatment, let alone
a crown." Plaintiff then requested extraction as soon as possible.

53)  On 6/12/06, after two request slips had been submitted complaining
of intense pain, I.R.C.C. dental department extracted plaintiff's
#19 tooth.

54)  The policy of denial of restorative care for inmates in
need only serves to deny inmates their 8th Amendment rights,
and, amounts to cruel and unusual punishment, especially in the
case of inmates who have multiple years left on their sentence,
as the plaintiff had when such violations began.

FIRST CAUSE OF ACTION

55)  That the actions of defendants Dr. Awada, Dr. Osafa, Dr.
Grammer, and Karen Harper violated the plaintiff's eighth and
fourteenth Amendment rights when the defendants failed to provide
the plaintiff with  adequate medical attention to his serious
medical needs.

SECOND CAUSE OF ACTION

56)  The actions of Wexford Health Sources Inc., Dr. Willard
Eylea, Barbara Hurt, Terri Anderson, Sherry Benton, Donald Hulick,
and Kevin Kirkbride violated the plaintiff's eighth Amendment
right to be free from cruel and unusual punishment and his fourteenth
Amendment right to Due Process of Law when defendants knew the
plaintiff was receiving inadequate medical attention to his serious
medical need and failed to intervene.

THIRD CAUSE OF ACTION

57)  The actions of Roger E. Walker Jr.  acting as director of
I.D.O.C.  and Dr. Willard Eylea acting as Agency Medical Director
fo I.D.O.C. violated plaintiff's right to be free from cruel
and unusual punishment by sustaining policies of not providing

-6-

inmates with restorative care which creates a wanton and unnecessary infliction of pain.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that the court grant the following relief:

A.    Issue a declaratory judgement stating that the actions of the defendants violated the rights of the plaintiff.

B.    Issue an injunction ordering the defendants or their agents to desist denying inmates restorative care including but not limited to crowns.

C.    Award compensatory damages jointly and severally against:

> 1. Defendants Dr. Awada, Dr. Osafa, Dr. Grammer, and Karen Harper for the physical and emotional pain sustained resulting from their failure to provide adequate medical care to the plaintiff.

> 2. Defendants Wexford Health Sources Inc., Dr. Willard Eylea, Barbara Hurt, Terri Anderson, Sherry Benton, Donald Hulick, and Kevin Kirkbride for emotional and physical pain and disfigurement suffered by plaintiff, resulting from defendants knowledge of inadequate medical attention and failure to intervene.

> 3. Defendants Roger E. Walker Jr. and Dr. Willard Eylea for emotional and physical pain and disfigurement sustained by plaintiff, resulting from implementation and/or enforcement of policies whereby inmates are denied restorative care.

D.    Award punitive damages against defendants Awada, Grammer, Osafa, Harper, Wexford Health Sources Inc., Eylea, Hurt, Anderson, Benton, Walker Jr., Hulick, and Kirkbride.

E.    Grant such other relief as it may appear that plaintiff is entitled.

Monday, October 30, 2006

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the above stated facts are true to the best of my knowledge.

Respectfully submitted,

Andre Hunter R-01100
Illinois River Correctional Center
P.O. Box 1900
Canton, IL. 61520

## TABLE OF EXHIBITS

A)    Medical description of crown and what conditions necessitate covering entire tooth surface above gumline with crown.

B)    Medical records from Illinois River Correctional Center and request slips

C)    Grievances

D)    Grievance Officer report to above grievances

E)    Letter to Warden Donald Hulick and Deputy Director Barbara Hurt

F)    Responses to letters of complaint

G)    Administrative Review Board response to grievance

## **EXHIBIT A**

**A.** Medical description of crown and what conditions
necessitate covering entire tooth surface above gum line
with crown. (The Columbia University College of
Physicians and Surgeons complete Home Medical Guide; 3rd
Revised Edition, 1995; Crown Publishers, Inc. New York)

eived prob-
hich is very

l their prod-
nto the sur-
sels in these
often cause
e excruciat-
to pressure
on from the
s of the face
spread and

tooth decay
ugar. Protec-
usually pre-
reover, this
a number of

on the teeth,
he teeth that
i felt by the
ain to hot or
ion, whereas
iy indicate an

cavities are
al therapy, or
. If the caries
on (pulpitis),
and applying
can facilitate
eal the pulp.
as caused the
are root canal
her the tooth

lecay must be
vity shaped to
rocedure, any
iesia.
the tooth tis-
rable, in color.
hewing forces
mouth. There-
ording to the
it teeth.
are most com-

mon. They are composed of an alloy of mercury and a variety of metals in addition to silver. Recently, the conventional mixture has been markedly improved with the inclusion of additional copper.

Plastic composite materials can be matched very closely in color to the tooth, are easy to use, and do not dissolve in the mouth fluids. Composites are now strong enough for use in the back teeth, which are subject to heavy biting forces.

**Root Canal Therapy.** Root canal therapy is a multiphase procedure designed to save a badly diseased tooth.

- All traces of pulp tissue are removed from the pulp chamber and the canals.
- The canals are mechanically shaped and cleaned of all bacteria.
- The canals are carefully and completely filled, usually with a form of gutta-percha material. A perfect seal is imperative to avoid reinfection and the need to remove the tooth.

After root canal therapy, the tooth needs to be restored and protected, as the teeth can become more brittle. (See box Crowns and Bonding.)

**Extraction.** When root canal therapy is not feasible, a permanent dead tooth must be extracted. Abscessed primary teeth may be saved using a procedure called a pulpotomy, in which only the pulp is removed. If a primary tooth is extracted and the permanent tooth does not emerge for 6 months, space maintainers should be considered. The extracted tooth can be replaced with a fixed bridge, a partial denture, or an implant supported prosthesis.

Dental pain accompanied by swelling or fever is an emergency; immediate care must be sought. The family dentist, an oral and maxillofacial surgeon, dental emergency service, or hospital emergency room all should have 24-hour coverage.

## PREVENTION

Current knowledge of caries suggests a three-part strategy for prevention:

**Combating Bacteria.** Plaque with a high concentration of acid-producing bacteria (especially *Streptococcus mutans*) is necessary for caries to develop. Techniques to interfere with plaque deposit include removing the plaque through good oral hygiene practices (see box How to Brush and Floss Your Teeth, and figures 32.4 and 32.5). Still in the experimental stage are the use of antibacterial agents directed toward the microorganisms in the plaque, and a vaccine to prevent the bacteria from adhering to the teeth.

Regular toothbrushing effectively removes plaque in

| SNACK FOODS THAT ARE NOT CARIOGENIC | |
|---|---|
| **FOOD GROUP** | **SNACKS** |
| Bread and cereal | Popcorn (unsalted) |
| Fruits and vegetables | All raw fruits and vegetables, unsweetened juices |
| Dairy | Cheddar cheese |
| Meats and proteins | All meats |
| | Hard-boiled eggs |
| | Bean dips |
| | Nuts (unsalted) |
| Other | Sugarless gum |
| | Sugarless candy |
| | Sugarless soft drinks |
| | Coffee or tea without sugar |

Taken with sweetened foods, milk can help wash sugar from the mouth.

Because some fruits—oranges, pineapples, peaches—are very high in natural sugar, frequent fruit snacks can be damaging to the teeth (although less harmful than candy bars). Dried fruits such as raisins are sweet and stick to teeth, and should be avoided as between-meal snacks.

those areas the brush reaches. The use of dental floss can remove plaque from between teeth. Five to 10 minutes of thorough brushing and flossing daily, supplemented by regular cleaning by a dentist or oral hygienist, can be very effective on all but the occlusal surfaces (the biting surfaces of the molars and premolars).

Plastic sealants placed on the occlusal surfaces after the teeth appear in the mouth (6 to 12 years) are effective in preventing plaque formation and enamel breakdown in this vulnerable area. Application of the sealant to the molars is quick and simple and usually takes less than an hour.

In a recent study, 95 percent of the teeth treated retained their sealants for years. In a 10-year study, sealant was completely or partially retained in 78 percent of the teeth treated. Research indicates that the use of sealants reduces decay by about 50 percent.

**Modifying the Diet.** The form and frequency of sugar ingestion is more influential on caries formation than the amount of sugar consumed. A "sweet tooth" gratified by between-meal snacks of foods high in sucrose is extremely conducive to tooth decay. Reducing overall sugar intake—of sucrose in particular—and limiting sugar to mealtimes will reduce tooth decay in most people. (See box Snack Foods That Are Not Cariogenic.)

Some foods seem to protect against caries: Cocoa and

796      MAINTAINING ORAL HEALTH

## CROWNS AND BONDING

Several conditions necessitate covering the entire tooth surface above the gumline with a replacement crown (also known as a cap):

• To cover severe damage from decay.
• To protect a tooth that has been heavily filled.
• To protect thin sections of the teeth that have had root canal treatment.
• To cosmetically improve front teeth that are unsightly due to decay or injury.

### Crowns

A tooth is prepared for a crown by removal of all its enamel, together with enough of the underlying dentin to provide for a sufficiently substantial crown. Impressions (molds) are taken of the tooth, as well as of the neighboring and opposing teeth, to ensure a precise and functional fit. Gold or an alloy has been traditionally used for crowns on the back teeth, where strength is required, often with plastic or porcelain facings. On the front teeth, a combination of gold and porcelain is used to make a crown both strong and attractive (the porcelain can match the tooth color almost exactly). Increasingly, porcelain alone is used as a crown for a single tooth, since new, stronger porcelain materials are now available.

**Bonding** is an increasingly popular alternative to a crown for a tooth that is chipped, or has stains, cracks, or flaws in the enamel. Bonding takes place in three steps:

• The enamel is lightly etched with an acid solution to improve retention.
• A paste made of plastic combined with finely ground quartz, glass, or silica matched as closely as possible to the tooth color is applied in layers until the imperfection is repaired or the stain covered.
• The restoration is set or "cured" by means of a chemical process that often uses ultraviolet or visible light.

### Veneers

In badly chipped or misshapen front teeth, for which the bonding is inadequate, thin acrylic shells or veneers can be bonded directly to the front surface of the teeth via acid etching. Unlike a crown, bonding and veneers are not permanent and the procedure may have to be repeated after several years of wear.

rice hulls, for example, contain a still unidentified anticariogenic substance, and phosphates in foods have similar protective qualities. Cheddar cheese eaten at the end of a meal generates a protective response, neutralizing mouth acids and helping to remineralize the tooth.

Contrary to popular belief, fibrous foods such as fruits and vegetables are not natural toothbrushes; instead, they protect by stimulating salivation, a natural mouth rinse that combats caries. Conversely, caries may become more prevalent when salivation decreases during sleep or is suppressed due to diseases of the salivary glands or as a side effect of certain drugs.

**Increasing Resistance to Decay.** The recent drop in caries among children is credited largely to fluoride supplementation or addition to drinking water, since there has been no apparent decrease in the prevalence of decay-producing bacteria and no decrease in sugar consumption. During early childhood, fluoride is incorporated into the enamel of developing teeth, modifying their crystal structure and making them more decay-resistant.

Over half the population in the United States—123 million people—drink fluoridated water (at a concentration of 1 part per million) either because the local water is naturally high in fluoride or because the municipal water supply is fluoridated. But while fluoridated communities have experienced a 50 percent decrease in caries, the wide-scale use of fluorides such as dentrifices and mouthwashes has also reduced the rate of caries by between 25 and 50 percent. It is estimated that every dollar spent on fluoridation saves $50 in dental bills.

In parts of the country without fluoridated water, fluoride can be prescribed as a dietary supplement during the period of tooth formation (that is, until about 14 years of age) and will produce a level of protection similar to that of fluoridated water. The supplement is available as drops, tablets, or a vitamin-fluoride combination. Taking the proper amount is crucial, since too much fluoride causes white spots or discolorations on teeth known as fluorosis.

• Children from birth to 2 should take 0.25 mg daily.
• Children 2 to 3 need 0.5 mg daily.
• Children 3 to 14 should take 1.0 mg/day until a year after all the permanent molars have appeared.

Pregnant women do not need to take fluoride supplements; it is in the first months of infancy that fluoride begins to help children's teeth.

The proper use of fluoride has no side effects and no effects other than dental fluorosis, or discoloration of the enamel, with elevated levels: More than 40 years of research in many countries attest to the safety and value of fluoridated water and fluoride supplements. Speculation that fluoride is responsible for cancer, birth defects, or any other condition is totally unfounded. The only rec-

## **EXHIBIT B**

**B.** Medical records from Illinois River Correctional Center
and request slips

# STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

Inmate/Student Name __
Inmate/Student I.D.# __

Reception Facility ____
Panorex ____

R01100   HUNTER, ANDRE M.
Age: __
Race: BLK      DOB: / /
JRC 12/06/2000      Sex: M

12 tely at R&C

- _____ _____ exam at receiving institution
- ☐ Schedule immediately at receiving institution

Screening
DDS sig _____  _____ DDS

JUVENILE

Existing Restorations and
Missing Teeth

Treatment Needed and
Completed Restorations

## Public Health Classification Screening Dates

| | | | | | | Pathology |
|---|---|---|---|---|---|---|
| Endodontics | | | | | | |
| Oral Surgery | | | | | | |
| Periodontics | | | | | | |
| Operative | | | | | | |
| Prosthetic | | | | | | |

### TREATMENT NEEDED - COMPLETED RESTORATIONS

Receiving Inst. IBCC
Dentist Grammee
Date 1-26-01

## MEDICAL HISTORY AND REMARKS

| | Yes | No | Current Medication |
|---|---|---|---|
| Cardio Vascular Disease | | | |
| Pulmonary Disease/Asthma | | | |
| Diabetes | | | |
| Epilepsy | | | |
| Hepatitis | | | |
| V.D. (Type ____ ) | | | |
| Allergies (Type ____ ) | | | |

## ADULT

EXISTING RESTORATIONS & MISSING TEETH

DC 7126 (Rev. 10/87)
IL 426-0018

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|------|------------------|------------------|------|------------------|------------------|
| 12-8-03 | | | 10-31-05 | | |
| 4-20-01 | | | | | |
| 2-20-03 | | | | | |
| 10-16-01 | | | 11-2-05 | | |
| 7:30 AM | | | 11:30 AM | | |
| 12-10-01 | | | 11-15-05 | | |
| 12-10-02 | | | 9:00 | | |
| | | | 11-1-05 | | |
| 12-3-03 | | | | | |
| | | | 11-21-05 | | |
| | | | 11-28-05 | | |
| 6-13-04 | | | 13:00 | | |
| 19:05 | | | | | |
| 5-24-04 | | | | | |
| 5/1/05 | | | | | |
| | | | | | |
| 5-1-05 | 2yr. Dental Exam | | 11-28-05 | | |
| | | | | | |
| 5-5-05 | | | 11-30-05 | | |
| 7-21-05 | | | 9:50 | | |
| 10-19-05 | | | | | |
| 2-05 | | | | | |
| 9:15 AM | | | | | |
| 5-1-05 | | | N.C. | | |
| 9:00 | | | 8-6-06 | | |
| 10-31-05 | | | 19:15 | | |
| 3:25 | | | | | |

# STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

Inmate/Student Name _HUMER, Anne_

Inmate/Student I.D.#

Reception Facility

Panorex

Screening
DDS Sig

☐ Schedule immediately at R&C

☐ Schedule routine exam at
receiving institution

☐ Schedule immediately at
receiving institution

Endodontics

Oral Surgery

Periodontics

Operative

Prosthetic

Public Health Classification Screening Dates

Pathology

JUVENILE

Existing Restorations and
Missing Teeth

Treatment Needed and
Completed Restorations

Receiving Inst. _____

Dentist _____

Date _7/27/06_

## MEDICAL HISTORY AND REMARKS

| | Yes | No | Current Medication |
|---|---|---|---|
| Cardio Vascular Disease | | | |
| Pulmonary Disease/Asthma | | | |
| Diabetes | | | |
| Epilepsy | | | |
| Hepatitis | | | |
| V.D. (Type ___ ) | | | |
| Allergies (Type ___ ) | | | |

## ADULT

### EXISTING RESTORATIONS & MISSING TEETH

R

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17

L

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

### TREATMENT NEEDED · COMPLETED RESTORATIONS

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16

DC 7126 (Rev. 10/87)
IL 426-0018

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 3-27-06 | *(illegible handwritten notes)* | *(signature)* | | | |
| 4/7/06 11:25 | *(illegible handwritten notes)* | *(signature)* | | | |
| 4.21.06 N.C- | *(illegible handwritten notes)* | *(signature)* | | | |
| 4/21/06 | *(illegible handwritten notes)* | *(signature)* | | | |

## STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

DC7177
IL426-0432                          RESIDENT REQUEST

| ASSIGNMENT: BAKERY 6AM - 2PM | | | | | DATE: 6×18×05 |
|---|---|---|---|---|---|
| NAME: HUNTER, ANDRE M. | NUM: R01100 | HSE: 1 | GAL: B | CELL: 23 | |

I REQUEST AN INTERVIEW WITH **DENTIST** TO DISCUSS THE FOLLOWING

HAVE A CAVITY THAT NEEDS TO BE REFILLED AS SOON AS POSSIBLE

*JUN 2005 Received Medical Office*

| REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE | RESIDENT SIGNATURE: Andre Hunter |
|---|---|

---

## STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

DC7177
IL426-0432                          RESIDENT REQUEST

| ASSIGNMENT: BAKERY 6AM - 2PM | | | | | DATE: 7×17×05 |
|---|---|---|---|---|---|
| NAME: HUNTER, ANDRE M. | NUM: R01100 | HSE: 1 | GAL: B | CELL: 23 | |

I REQUEST AN INTERVIEW WITH **DENTIST** TO DISCUSS THE FOLLOWING

FILLING AND TOOTH ARE CHIPPING AND CAUSING INCREASING PAIN. I WAS DENIED

*JUL 2005 Received Medical Office*

| REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE | RESIDENT SIGNATURE: Andre West |
|---|---|

---

## STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

RESIDENT REQUEST

| ASSIGNMENT. BAKERY BAKERY 6AM - 2PM | | | | | DATE. 7×30×05 |
|---|---|---|---|---|---|
| NAME: HUNTER, ANDRE M. | NUM: R01100 | HSE: 1 | GAL: B | CELL: 23 | |

I REQUEST AN INTERVIEW WITH **DENTIST** TO DISCUSS THE FOLLOWING

PAIN FROM TOOTH IS BECOMING UNBEARABLE WOULD LIKE TO GET WORK DONE AS SOON AS POSSIBLE

*AUG 2005 Received Medical Office*

| REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE | RESIDENT SIGNATURE: Andre West |
|---|---|

STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

DC7177
IL426-0432

RESIDENT REQUEST

ASSIGNMENT: BAKERY 7AM - 3PM

DATE:

NAME: HUNTER, ANDRE M.     NUM: R01100   HSE: 1   GAL: B   CEL:

I REQUEST AN INTERVIEW WITH ___DENTIST___ TO DISCUSS THE FOLLOWING:
___ RECURRENT PROBLEM WITH FILLING
LOWER LEFT SIDE

REASON FOR INTERVIEW MUST
BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: Andre Hunter

---

## ILLINOIS RIVER CORRECTIONAL CENTER
## GENERAL HOSPITAL PRESCRIPTION
# OFFENDER MEDICAL ROUTING FORM

NAME: Hunter, Andre     NUMBER: R01100     HU#: _____

ORTHO CONSULT: _____     EYE CLINIC: _____

DENTAL: X     X-RAY: _____

CHRONIC CLINICS: _____     OTHER: Cracked tooth

PSYCHOLOGIST: _____          pain, being treated

PSYCHIATRIST: _____          for abcess

NURSE SIGNATURE: A Hunter

MD ORDERING: _____

DATE: 11/19/05     REASON: _____

IRI 0105 (4/2003) IL 426-15367

**STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS**

DC7177
IL426-0432

**RESIDENT REQUEST**

ASSIGNMENT: BAKERY 7AM-3PM

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL: B    CELL:

DATE:

I REQUEST AN INTERVIEW WITH DENTIST TO DISCUSS THE FOLLOWING PAIN TO CRACKED TOOTH IS INCREASING AND IS AFFECTING MY EATING ~~HABITS~~ HABITS, I REQUEST REMEDY AS SOON AS POSSIBLE

REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: *Andre Hunter*

---

**STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS**

DC7177
IL426-0432

**RESIDENT REQUEST**

ASSIGNMENT: BAKERY 7AM-3PM

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL:    CELL: 23

DATE: 3-12-06

I REQUEST AN INTERVIEW WITH DENTIST TO DISCUSS THE FOLLOWING I'VE BEEN GETTING HEADACHES I THINK ARE BY AN ALREADY PAINFUL TOOTH PLEASE HELP.

REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: *Andre Hunter*

# **EXHIBIT C**

**C.** Illinois River Grievances(1-3-06)

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** 06-0062    1623

| Date: 1-3-06 | Committed Person: Andre Hunter (Please Print) | | ID#: #R01100 |
|---|---|---|---|
| Present Facility: I.R.C.C | | Facility where grievance issue occurred: I.R.C.C | |

**NATURE OF GRIEVANCE:**    Med treatment

☐ Personal Property    ☐ Mail Handling    ☐ Restoration of Good Time    ☐ Disability
☐ Staff Conduct    ☐ Dietary    ☑ Medical Treatment    ☐ Other (specify)
☐ Transfer Denial by Facility    ☐ Transfer Denial by Transfer Coordinator

☐ Disciplinary Report: ___/___/___
          Date of Report           Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
     **Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
     **Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
     **Chief Administrative Officer,** only if EMERGENCY grievance.
     **Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** I HAVE A TOOTH ON THE LOWER LEFT SIDE OF MY JAW (#19)THAT CAUSES ME ENOUGH PAIN TO AFFECT MY EATING HABITS. BECAUSE A ROOT CANAL TREATMENT WAS PERFORMED ON THIS TOOTH AROUND 1998, THE SHELL OF TOOTH THAT REMAINS IS THIN, CRACKED, AND HAS HAD TO BE FILLED REPEATEDLY, TO AN INCREASINGLY HEAVIER EXTENT. I HAVE DEVELOPED MULTIPLE ABCESSES AROUND THIS TOOTH (#19) ON NUMEROUS OCCASIONS. THESE ABCESSES ARE EXTREMELY PAINFUL AND MAKE IT DIFFICULT FOR ME TO CONSUME SOLID FOOD WHEN THEY DEVELOP. SINCE IT BECAME A PROBLEM IN APRIL 2004, I HAVE VISITED THE RESIDENT DENTIST AT I.R. C.C. H.C.U. MANY TIMES SEEKING A REMEDY FOR THIS AILMENT. I HAVE HEARD FROM THREE DENTISTS AT I.R.C.C. H.C.U. THAT I NEED A CROWN TO COVER THIS (cont.)

**Relief Requested:** (1) I WANT MY GRIEVANCE REFERRED TO THE AGENCY MEDICAL DIRECTOR (2) THAT I RECEIVE ADEQUATE MEDICAL ATTENTION AS I AM ENTITLED UNDER THE 8th AMENDMENT

☑ Check only if this is an **EMERGENCY** grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Andre Hunter_      R-01100      1, 3, 06
Committed Person's Signature      ID#      Date

*(Continue on reverse side if necessary)*

---

**Counselor's Response** (if applicable)

Date Received: 1, 13, 06     ☐ Send directly to Grievance Officer     ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: DISCUSSED ISSUE. INMATE STATES he Thinks he DID NOT GET ADEQUATE MEDICAL TREATMENT For his Sore tooth. FORWARD COPY TO STAFF For RESPONSE + Original to G.O.

_Jay Shepler_      _Jay Shepler_      1, 17, 06
Print Counselor's Name      Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

Date Received: 1, 9, 06     Is this determined to be of an emergency nature?

RECEIVED
JAN 10 2006
GRIEVANCE OFFICER

☐ Yes; expedite emergency grievance
☑ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

_Donald Hulick_      1, 9, 06
Chief Administrative Officer's Signature      Date

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued)

PROBLEMATIC TOOTH; AND WERE I TO RECEIVE A CROWN ON #19, THE COMPLICATIONS WITH SAID TOOTH WOULD MOST LIKELY CEASE. AFTER REQUESTING THIS TREATMENT (ALSO KNOWN AS CAPPING), I WAS TOLD BY THESE DENTISTS THAT THEY CANNOT ISS-UE CROWNS, AND MY ONLY OPTION FOR RELIEF WAS EXTRACTION OF #19.

ACCORDING TO THE COLUMBIA COLLEGE OF PHYSICIANS AND SURGEONS COMPLETE HOME MEDICAL GUIDE(3rd REVISED ED.) "SEVERAL CONDITIONS NECESSITATE COVERING THE ENTIRE TOOTH SURFACE ABOVE THE GUMLINE WITH A REPLACEMENT CROWN:

    °TO PROTECT A TOOTH THAT HAS BEEN HEAVILY FILLED

    °TO PROTECT THIN SECTIONS OF THE TEETH THAT HAVE HAD ROOT CANAL THERAPY

THE NEW COMPLETE MEDICAL AND HEALTH ENCYCLOPEDIA VOL. 3 SHOWS THAT THE LAST STEP IN ROOT CANAL THERAPY IS TO CAP THE TOOTH. (SEE ATTACHMENT, p.732 step (4). THE PAIN TO MY TOOTH BEGAN IN 2004 AS A SLIGHT ACHE THAT WOULD COME AND GO. THIS IS THE FIRST TIME THE DENTISTS AT I.R.C.C. H.C.U. TOLD ME THAT I NEEDED A CROWN, BUT THEY COULD NOT GIVE ME ONE. SINCE THEN I HAVE BEEN BACK AND FORTH TO THE I.R.C.C. H.C.U. EACH VISIT I COMPLAINED OF GREATER PAIN AND EACH VISIT I WAS TOLD EXTRACTION WAS THE ONLY REMEDY AVAILABLE. AFTER TOOTH #19 WAS FILLED A SECOND TIME I BEGAN DEVELOPING ABCESSES THAT CAUSED ME SEVERE PAIN, DAY AND NIGHT. IT WAS THIS EXCRUCIATING PAIN THAT LEAD ME TO ACCEPT THE DENTIST'S OFFER TO EXTRACT #19. I THEN LEARNED THAT THE DENTIST's AND/OR HPL's DENIAL OF TOOTH-PRESERVING TREATMENT CONSTITUTES DELIBERATE INDIFFERENCE TO MY SERIOUS DENTAL NEED. DENTAL CONDITIONS ARE DEEMED SERIOUS IF THEY "CAUSE PAIN, DISCOMFORT, OR THREAT TO GOOD HEALTH.) (DEAN V. COUGHLIN, 623 F. supp. at 404) I HAVE ALREADY COMMUNICATED THE PAIN AND DISCOMFORT I HAVE FELT AND STILL FEEL AT THIS MOMENT. RECURRING ABCESSES POSE A THREAT TO MY GOOD HEALTH IN THAT THEY CAN GROW INORDINAT-ELY LARGE AND BURST, CAUSING THE PUS TO ENTER MY BLOOD STREAM AND ACT AS POISON. I.R.C.C. H.C.U. DENTIST'S AND/OR HPL's DENIAL OF PROVIDING A CROWN IS A VIOLATION OF MY 8th AMENDMENT RIGHT TO MEDICAL CARE. (MEDICAL CARE IS DEEMED A BASIC HUMAN NEED, THUS DENIAL AND DEPRIVATION OF THIS BASIC HUMAN NEED CONSTITUTES A VIOLATION OF THE 8th AMENDMENT, WHICH PROHIBITS "UNQUESTIONED AND SERIOUS DEPRIVATIONS OF BASIC HUMAN NEEDS" [RHODES V. CHAPMAN 452 U.S. at 347; accord, WILSON V. SEITER, 501 U.S. 294, 111 S.ct 2321, 2324 (1991)]. SECTION 4.6 (a) OF HPL's CONTRACT WITH THE STATE OF ILLINOIS READS "ALL MEDICAL SERVICES SHALL BE PROVIDED ACCORDING TO MEDICALLY ACCEPTED COMMUNITY STANDARDS OF CARE." I FEEL I HAVE PROVEN THAT A CROWN IS THE MEDICALLY ACCEPTED COMMUNITY STANDARD OF CARE FOR THE AILMENT FROM WHICH I SUFFER. I ALSO FEAR THAT AS RESULT OF I.R.C.C. H.C U.'s INADEQUATE DENTAL CARE, MY TOOTH (#19) MAY HAVE ALREADY DETERIORATED TO THE POINT OF REQUIRING EXTRACTION. I REFUSED EXTRACTION BECAUSE THERE MAY BE A CHANCE MY TOOTH CAN BE SAVED, AND THE EXTREME PAIN RELIEVED.

ILLINOIS DEPARTMENT OF CORRECTIONS

**COMMITTED PERSON'S GRIEVANCE**  06- *OWO* *~~~~* 1b23

| Date: 1-3-06 | Committed Person: (Please Print) Andre Hunter | ID#: R-01100 |
|---|---|---|
| Present Facility: I.R.C.C. | Facility where grievance issue occurred: | I.R.C.C. |

**NATURE OF GRIEVANCE:**     *Med - other (legible records)*

- [ ] Personal Property
- [ ] Staff Conduct
- [ ] Transfer Denial by Facility
- [ ] Mail Handling
- [ ] Dietary
- [ ] Transfer Denial by Transfer Coordinator
- [ ] Restoration of Good Time
- [ ] Medical Treatment
- [ ] Disability
- [x] Other (specify): *LEGIBLE MED. RECORDS*

- [ ] Disciplinary Report: ____ / ____ / ____
  Date of Report _____ Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
**Counselor,** unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
**Grievance Officer,** only if the issue involves discipline at the present facility or issue not resolved by Counselor.
**Chief Administrative Officer,** only if EMERGENCY grievance.
**Administrative Review Board,** only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On 12-15-05 I went to I.R.C.C. H.C.U. to request copies of my medical records. On 12-21-05 I received said copies. Pursuant to HPL contract section 4.15 (b) "Contractor shall ensure that medical records are complete and filed promptly and contain accurate legible entries." My dental records are essentially illegible. I am grieving this fact.

**Relief Requested:** (1) I request that H.C.U. provide me the means to decipher the illegible hand-writing in my medical records.

(2) That in the future my medical records contain legible entries.

- [ ] Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____ Committed Person's Signature _____ ID# _____ / ____ / ____ Date

*(Continue on reverse side if necessary)*

---

**Counselor's Response (if applicable)**

Date Received: 1 , 13 , 06

- [ ] Send directly to Grievance Officer
- [ ] Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: *Discussed issue. Inmate stated he can not read copies from HCU. Would like new copies. Forward copy to staff for response + giving it to G.O.*

*JAY SHEPLOR* _____ Print Counselor's Name
*Jay Shepl* _____ Counselor's Signature
1 , 17 , 06 _____ Date of Response

---

**EMERGENCY REVIEW**

Date Received: ____ / ____ / ____

Is this determined to be of an emergency nature?
- [ ] Yes; expedite emergency grievance
- [ ] No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

RECEIVED

JAN 1 1 2006

GRIEVANCE OFFICER

_____ Chief Administrative Officer's Signature _____ / ____ / ____ Date

## EXHIBIT D

**D.** Grievance Officer report to above grievances (1-10-06)

ILLINOIS DEPARTMENT OF CORRECTIONS
## RESPONSE TO COMMITTED PERSON'S GRIEVANCE

1B23

| Grievance Officer's Report |
|---|

**Date Received:** 1/10/06          **Date of Review:** 3/7/06          **Grievance #:** 06-0062/0140

**Committed Person:** Andre Hunter     1B23          **ID#:** R01100

**Nature of Grievance:** Medical Treatment: The offender grieves lack of dental treatment.

**Facts Reviewed:** The complaint and grievance fact sheet was reviewed.

Offender alleges that he has a problem tooth that causes enough pain to affect his eating habits. The offender claims a root canal was done leaving the tooth thin and cracked and causes it to have to be repeatedly filled. The offender claims that this has caused him to get abscesses around the tooth that cause severe pain making it difficult to eat solid food. The offender states he has visited the dentist several times and has been told that a crown is needed but IRCC will not do what is needed and has advised extraction. The offender claims that denial of the needed crown is a violation of his 8th amendment rights to medical care. The offender also grieves getting copies of his medical record that are not legible.

Dr. Awada responds: The offender has been seen several times to restore his fillings due to fractures The offender was advised that a crown was needed but couls not be done in the Department of Corrections per A.D. 04.03.102, 8b. The offender has also been seen several times for abscesses around the tooth due to lack of good contact (large filling) and furcation problems (gum problems) which promoted the recommendation of extraction. The offender refused the tooth removal. The only treatment remains the extraction of the tooth since DOC will not allow a crown per A.D..

Based upon a total review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this Grievance Officer is reasonably satisfied that staff misconduct cannot be substantiated and recommends that the offender's grievance be denied.

**Recommendation:** Grievance Denied

Kevin N. Kirkbride, CLAS II
Print Grievance Officer's Name

Grievance Officer's Signature

(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** March 3, 2006          ☑ I concur     ☐ I do not concur     ☐ Remand

Comments:

Chief Administrative Officer's Signature                    March 8, 2006
                                                            Date

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

Committed Person's Signature          R-01100          3-14-06
                                      ID#                Date

## **EXHIBIT E**

**E.** Letter to Warden Donald Hulick and Deputy Director
Barbara Hurt (March 6, 2006)

Andre Hunter #R01100
P.O. BOX 1900
Canton, IL 61520


March 6, 2006                              RE:VIOLATION OF D.R
                                              504.840 and A.D
                                              04.01.114(G)


Barbara Hurt
Deputy Director Dist#2
Sheridan Correctional Center
4017 E. 2603 Road
Sheridan, IL 60551


Dear Director Hurt:

In January of 2006 I filed an emergency grievance concerning
inadequate health care (dental).  To this date I have heard
nothing. Per A.D. 04.01.114 (G2) the warden has three days
to respond to an emergency grievance.  The warden must do one
of the following:(1) Treat the grievance as an emergency or
(2) Notify me in writing  that the grievance is not an
emergency and explain why.

The grievance was received by the Wardens Office.  My situation
required immediate attention.  I was and still am suffering
from a toothache.  My tooth needs a crown and the dentist is
refusing to give me a crown.  He states that Wexford does not
provide inmates with crowns because crowns are cosmetic dentistry.
He also explained that this  is consistent with I.D.O.C. policy
(even though he could not cite the policy).

If there is such a policy Please take notice that it would be
tantamount to violating my  8thAmendment Right. I am asking
that you take the necessary action to protect my constitutonal
right to adequate health care.  Also I would ask that you
instruct the institutionto follow the D.Rs and A.Ds in handling
my grievance.

I look forward on hearing from you concerning this matter.  My
goal of filing a grievance was to exhaust my administrative
remedies and afterward seek for injunctive relief where I can
receive adequate care.


                                  Sincerely,

                                  André Hunter

c.c: Warden Hulick

## **EXHIBIT F**

**F.** Responses to letters of complaint (Barbara Hurt, March 15, 2006; Willard Eylea, April 5, 2006)

**Illinois**
Department of
**Corrections**

**ROD R. BLAGOJEVICH**
Governor

**Roger E. Walker Jr.**
Director

James R. Thompson Center / 100 W. Randolph Street / Suite 4-200 / Chicago, IL 60601 / Telephone: (312) 814-3017 / TDD: (800) 526-0844

April 5, 2006

Mr. Andre Hunter
Register #R-01100
P. O. Box 1900
Canton, Illinois 61520

Dear Mr. Hunter:

Thank you for your letter concerning your dental care while you are currently housed at Illinois River Correctional Center. I reviewed your dental record with the health care unit administrator at Illinois River and the record is clear that you have seen a dentist a number of times. I also reviewed your record with a dental consultant who informed me that based on your dental findings, extraction is the treatment of choice. Your anatomical findings preclude any treatment other than extraction. As mentioned in your medical record you have refused this extraction.

Your dental care has been well within reasonable and acceptable standards and I trust this letter is responsive to your concerns.

Sincerely,

Willard O. Elyea, M.D.
Agency Medical Director
Illinois Department of Corrections

WOE: dva

cc:     File
        Chron

**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

District 2 Deputy Director / Sheridan Correctional Center / 4017 E. 2603 Road / Sheridan, IL 60551 / Telephone:  (815) 496-2181 / TDD:  (800)  526-0844

March 15, 2006

Andre Hunter, R01100
Illinois River Correctional Center
P.O. Box 1900
Canton, IL  61520

Dear Mr. Hunter:

Your March 6, 2006 letter concerning dental care at Illinois River Correctional Center has been reviewed.

The Illinois Department of Corrections does not approve placement of a "permanent prosthesis".  Dental crowns fall into this category.  The Department provides only for removal dental prosthetics as determined clinically necessary by the dentist.  Therefore, your only recourse is to have the tooth extracted.

Your grievance was deemed not of an emergency nature per Warden Hulick on January 9, 2006 and it would seem the handling of your grievance was in accordance with established guidelines being within the 60 day period.

I trust this addresses your concerns.

Sincerely,

Barbara A. Hurt, Deputy Director
District #2

cc:    Warden Hulick, Illinois River CC
        Masterfile – R01100
        File

## **EXHIBIT G**

**G.** Administrative Review Board response to grievance (April 3, 2006)



**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

April 3, 2006

Andre Hunter
Register No. R01100
Illinois River Correctional Center

Dear Mr. Hunter:

This is in response to your grievance received on March 17, 2006, regarding Medical (Requesting Tooth #19 be Crowned) and Staff Conduct (Dental Staff), which was alleged to have occurred at Illinois River Correctional Center. This office has determined the issue will be addressed without a formal hearing.

This office has reviewed your written grievance dated January 3, 2006 regarding the above issue and claims that had staff properly treated you originally, your tooth (#19) would not need a possible extraction.

The Grievance officer's report (06-0062/0140) and subsequent recommendation dated March 7, 2006 and approval by the Chief Administrative Officer on March 8, 2006 have been reviewed.

This office notes that the Grievance officer has provided two grievance numbers on their report. This usually suggests that two of the offender's grievances have been combined. However, Offender Hunter has only submitted one grievance to this office.

Per the Grievance officer's response, Dr. Awada was contacted and provided a response, which this office reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Sherry Benton
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:   Acting Warden Austin Randolph, Illinois River Correctional Center
Andre Hunter, Register No. R01100