E-FILED
Wednesday, 06 June, 2007  04:27:40 PM
Clerk, U.S. District Court, ILCD

## WAIVER OF SERVICE OF SUMMONS

I,  Barbara Hurt                              , acknowledge receipt of your request
        (DEFENDANT NAME)

for a waiver of service of summons in the case of  Hunter v Awada, et al
                                        (Short version of caption and case number)

07-3062                              in the United States District Court for the Central District of Illinois

**FILED**
JUN 0 6 2007
JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

I have also received a copy of the complaint in the case.

I agree to save the cost of service of a summons in this lawsuit by not requiring service of judicial process in the manner provided by Federal Rule of Civil Procedure 4.

I retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court, except for objections based on a defect in the summons or in the service of the summons.

I understand that a response to the complaint should be filed by me, or on my behalf,  by whomever represents me in the case, within sixty (60) days of the date (        April 17, 2007        ) the notice and waiver were sent to me by the clerk of the district court.

17 May 07
(DATE)

_____
(SIGNATURE)

Duty to Avoid Unnecessary Costs of Service of Summons

Federal Rule of Civil Procedure 4 requires parties to cooperate in saving unnecessary costs of service of the summons and complaint.  A defendant located in the United States who, after being notified of a case against him and asked to waive service of summons, fails to do so will be required to bear the costs of such service unless good cause is shown for failure to sign and return the waiver of service.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the case or the parties. A party who waives service of summons retains all defenses and objections to the case, the jurisdiction of the court or the place where the case has been filed.  Filing a waiver of service gives a defendant additional time, beyond what would be allowed if summons was served, to respond to the complaint.

The Prisoner Civil Litigation Reform Act, 42 U.S.C. §1997e(g), provides that a defendant in a prisoner's civil rights claim cannot be defaulted for failure to file a responsive pleading to the complaint.

**E-FILED**
Tuesday, 17 April, 2007 01:53:45 PM
Clerk, U.S. District Court, ILCD

## NOTICE OF LAWSUIT AND REQUEST FOR
## WAIVER OF SUMMONS

**TO:**   Barbara Hurt

**(Defendant's name)**

A lawsuit has been commenced against you . A copy of the complaint is attached to this notice. It has been filed in the United States District Court for the Central District of Illinois, United States Courthouse, 600 E. Monroe, Springfield, Illinois 62701, and has been assigned docket number 07-3062.

This is not a formal summons, but rather a request that you sign and return the enclosed waiver of service in order to save the cost of serving you with a court summons and an additional copy of the complaint. The cost of service will be avoided if the court receives a signed copy of the waiver within thirty (30) days after the date designated below as the date on which this Notice is sent. An extra copy of the waiver and notice is also attached for your records.

If you comply with this request and return the signed waiver, it will be filed by the court and no summons will be served on you. The case will then proceed as if you had been served on the date the waiver is filed, except that you will not be obligated to answer the complaint before sixty (60) days from the date designated below as the date on which this notice is sent.

If you do not return the signed waiver within the time indicated, the plaintiff will take appropriate steps to effect formal service in a manner authorized by the Federal Rules of Civil Procedure and will then, to the extent authorized by those Rules, ask the court to require you to pay the full costs of such service. In that connection, please read the statement concerning the duty of parties to waive the service of the summons, which is set forth at the bottom of the waiver form.

You should make certain that this notice and waiver is delivered to whomever will represent you in the referenced litigation . You should also notify that person that you have signed and returned the waiver to the clerk of the court.

Dated      April 17, 2007 .

s/John M. Waters
Clerk, United States District Court
Central District of Illinois

United States Courthouse
600 E. Monroe
Springfield, Illinois 62701
217/492-4020




Illinois Department of Corrections

# REQUEST FOR LEGAL REPRESENTATION

The following form must be fully completed and forwarded as indicated **IMMEDIATELY** upon Service of Summons or Waiver of Service of Summons in any civil action. Two copies of the summons or the waiver and the complaint must be forwarded with the original and one copy of this form together with two copies of the postmarked envelope in which they were received or the express mail receipt showing the date of mailing.

TO: The Honorable Attorney General
C/O Chief Legal Counsel
Department of Corrections
James R. Thompson Center
100 W. Randolph St., Suite 4-200
Chicago, Illinois 60601

## FILED

JUN 0 6 2007

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Case Name: 07-3062

Civil Action Number: Hunter v Awada, et al

In accordance with the terms of 5 ILCS 350/1 et. seq. I hereby request representation in the subject case and any other benefits of the statute. In making this request, I understand that these services are being made to me in this matter at no cost to me and that no fee or other remuneration has been or will be required; that the attorney(s) who represent me will represent me to the best of their abilities but that no promise or guarantee of any kind as to the final outcome of this case has been made to me by the attorneys or anyone associated with them; that no one has requested or demanded that I use the services of these attorneys and that I understand that I am free to engage counsel of my own choice and at my own expense; that if I am covered by insurance with respect to any of the acts alleged in the complaint, I have notified my insurance carrier and have specifically informed them of the nature of the complaint and of this agreement.

I further agree to cooperate fully and promptly with the attorney(s) assigned to this matter and that I will promptly notify them of anything which comes to my attention which I believe could be a conflict of interest between myself and any other defendant(s). I agree to notify the attorney assigned to this case of any change in my address and phone number in the event I terminate my state employment.

I also understand that the choice of counsel to represent me is within the discretion of the Attorney General and that under the statute the Attorney General may refuse to represent me if in appearing and defending there is an actual or potential conflict of interest or if the act or omission which gave rise to the claim was not within the scope of my employment or was intentional, willful or wanton misconduct. In the event that the Attorney General refuses to represent me, I understand that I will be advised in writing and that the alternatives will be explained to me.

I was served in the above-captioned cause on (date) _____ at (time) _____ (a.m./p.m.) by Mail _____ Personal Service _____ (check one), or in the alternative, I waived service on (date) 5/31/07 and returned the Waiver of Service of Summons to the plaintiff or plaintiff's attorney. (Two copies of the Waiver of Service of Summons form together with two copies of the postmarked envelope in which it was received or the express mail receipt showing the date of mailing are attached hereto).

_____    Barbara A. Hurd
Employee/Defendant's Signature    Printed Name

cc:    Chief Legal Counsel (2)
Defendant (1)
File (1)

DC 5677 (rev 2 / 00)
IL 426-4321

JOHN M. WATERS, CLERK
U.S. DISTRICT COURT
600 E. MONROE-ROOM 151
SPRINGFIELD, IL 62701

ILLINOIS DEPARTMENT OF CORRECTIONS
1301 CONCORDIA COURT
P.O. BOX 19277
SPRINGFIELD, IL   62794-9277

ATTENTION:

## Service of Process:

3:07-cv-03062-HAB-BGC Hunter v. Awada et al

37, PRISONER, REFER

### U.S. District Court

### United States District Court for the Central District of Illinois

## Notice of Electronic Filing

The following transaction was entered on 4/17/2007 at 1:54 PM CDT and filed on 4/17/2007

**Case Name:**          Hunter v. Awada et al
**Case Number:**        3:07-cv-3062
**Filer:**              Andre Hunter
**Document Number:** 9

**Docket Text:**
REQUEST FOR WAIVER OF SERVICE and Notice of Lawsuit sent to Barbara Hurt on 4/17/2007 by Andre Hunter. (MAS, ilcd)

**3:07-cv-3062 Notice has been electronically mailed to:**

**3:07-cv-3062 Notice has been delivered by other means to:**

Andre Hunter
R01100
ILLINOIS RIVER
Illinois River Correctional Center
Inmate Mail/Parcels
PO Box 1900
Canton, IL 61520

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1068668610 [Date=4/17/2007] [FileNumber=501683-0]
[3fa1276a2eab006a7a3046cfca3555ddda9c04f1ae437f1f89bb33976ec47e581761
ab8cc3e41bbfa28b4ea45dbda931ca933efdb06b01a3c78186b968add8fa]]

E-FILED
Tuesday, 10 April, 2007  05:03:41 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| ANDRE HUNTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO.  07-CV-3062 |
| | ) | |
| DR. BEN AWADA, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## SCHEDULING ORDER

Pursuant to 28 U.S.C. § 1915A, Plaintiff's cognizable claims have been identified in a prior court order.  Plaintiff has been granted leave to proceed *in forma pauperis*, and automatic monthly deductions will be made from the prisoner's trust fund account until the filing fee of $350.00 is paid in full.  These payments must be collected even if Plaintiff decides not to proceed with the case or the case is otherwise dismissed.  *See* 28 U.S.C. § 1915(b)(1).

**IT IS THEREFORE ORDERED** that the Clerk shall prepare for each Defendant: 1) a Notice of Lawsuit and Request for Waiver of Service of Summons; and 2) a Waiver of Service of Summons.  The Clerk is directed to mail said forms, a copy of the Complaint, and this Scheduling Order to each Defendant's work address or employer address as provided by Plaintiff.  If a Defendant fails to sign and return the Waiver to the Clerk within 30 days from the date said forms were sent, the Court will take appropriate steps to effect formal service on that Defendant and will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the address provided by Plaintiff, the Correctional Center shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above, or for formally effecting service. Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

1

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the court. Plaintiff shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date on which a true and correct copy of any document was mailed to Defendants or their counsel. Any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk or that fails to include a certificate of service will be stricken by the Court.

**IT IS FURTHER ORDERED** that this cause is set for further scheduling procedures under Fed. R. Civ. P. 16 on **June 19, 2007 at 9:30 a.m.** before the Honorable Harold A. Baker, by telephone conference. The Clerk is directed to give Plaintiff's place of confinement notice of the date and time of the conference, and to issue the appropriate process to secure the Plaintiff's presence at the conference.

**IT IS FURTHER ORDERED** that counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.

**IT IS FURTHER ORDERED** that Plaintiff immediately notify the court of any change in his mailing address and telephone number. Failure to notify the court of any change in the mailing address will result in dismissal of this lawsuit, with prejudice.

**IT IS FURTHER ORDERED** that the Clerk is to notify the parties of their option to consent to disposition of this case before a United States Magistrate Judge by providing Plaintiff with a magistrate consent form and accompanying court explanation. Upon receipt of a signed consent from Plaintiff, the Clerk is further directed to forward the consent to Defendants for consideration.

ENTERED this 10th day of April, 2007.

_____ s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE

2

3:07-cv-03062-HAB-BGC # 36    Page 8 of 41

## Orders on Motions

3:07-cv-03062-HAB-BGC Hunter v. Awada et al

37, PRISONER, REFER

### U.S. District Court

### United States District Court for the Central District of Illinois

### Notice of Electronic Filing

The following transaction was entered on 4/2/2007 at 3:09 PM CDT and filed on 4/2/2007

**Case Name:**  Hunter v. Awada et al

**Case Number:**  3:07-cv-3062

**Filer:**

**Document Number:** No document attached

**Docket Text:**
ORDER granting [d/e 1] Petition to Proceed In Forma Pauperis. Pursuant to 28 U.S.C. Section 1915(b)
(1), the Plaintiff is assessed an initial partial filing fee of $54.48. The agency having custody of the
Plaintiff is directed to forward the initial partial filing fee from the Plaintiff's account to the Clerk of
Court. After payment of the initial partial filing fee (or immediately if no funds are available for that
payment) the agency having custody of the Plaintiff is directed to make monthly payments of 20 percent
of the preceding month's income credited to the Plaintiff's account to the Clerk of Court. The agency
having custody of the plaintiff shall forward these payments each time the Plaintiff's account exceeds
$10, until the filing fee of $350 is paid in full. The Clerk is directed to mail a copy of this order to the
Plaintiff's place of confinement, to the attention of the Trust Fund Office. Entered by U S Magistrate
Judge Byron G. Cudmore on 4/02/2007. (MAS, ilcd)

**3:07-cv-3062 Notice has been electronically mailed to:**

**3:07-cv-3062 Notice has been delivered by other means to:**

Andre Hunter
R01100
ILLINOIS RIVER
Illinois River Correctional Center
Inmate Mail/Parcels
PO Box 1900
Canton, IL 61520

**Orders on Motions**
3:07-cv-03062-HAB-BGC Hunter v. Awada et al
37, PRISONER, REFER

## U.S. District Court

### United States District Court for the Central District of Illinois

**Notice of Electronic Filing**

The following transaction was entered on 4/2/2007 at 3:02 PM CDT and filed on 3/30/2007
**Case Name:**        Hunter v. Awada et al
**Case Number:**      3:07-cv-3062
**Filer:**
**Document Number:** No document attached

**Docket Text:**
TEXT ORDER: Pursuant to 28 U.S.C. Section 1915A, the Court finds Plaintiff states a claim for
deliberate indifference to his serious medical (dental) needs. Determinations of personal responsibility
and reliance on medical professionals better awaits a developed factual record. This case is referred to
the Magistrate Judge for entry of a Prisoner Scheduling Order. The defendants shall file an answer
within the time prescribed by Local Rule. Plaintiff's motion for appointment of counsel is denied (d/e 2),
with leave to renew. At this point Plaintiff appears competent to proceed pro se, and the record is not
developed enough to determine if appointed counsel would make a difference in the outcome of the
case. Entered by Judge Harold A. Baker on 3/30/2007. (MAS, ilcd)


**3:07-cv-3062 Notice has been electronically mailed to:**


**3:07-cv-3062 Notice has been delivered by other means to:**

Andre Hunter
R01100
ILLINOIS RIVER
Illinois River Correctional Center
Inmate Mail/Parcels
PO Box 1900
Canton, IL 61520

E-FILED
Friday, 13 April, 2007 04:43:26 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANDRE HUNTER,                           )
Plaintiff,                              )
                                        )
                                        )
                                        )
                                        )    CASE NO. 07-3062
                                        )
vs. Dr. Ben Awada, Dr. Graciela         )
Grammer, Dr. Seth Osafa, Dr.            )    JURY TRIAL DEMANDED
Willard Elyea, Barbara Hurt,            )
Roger Walker, Terri Anderson,           )
Sherry Benton, Karen Harper,            )
Donald Hulick, Wexford Health Sources Inc.,)
Kevin Kirkbride,                        )
Defendants.                             )

COMPLAINT

PRELIMINARY STATEMENT

     This a civil rights action filed by Andre Hunter, a state
prisoner, for damages and injunctive relief under 42 U.S.C. §
1983, alleging denial of adequate medical care in violation of
the Eighth Amendment to the United States Constitution.

JURISDICTION

1)   This court has jurisdiction of the plaintiff's claims of
violation of federal constitutional rights under 42 U.S.C. §§
1331(a) and 1343.

2)   This district has jurisdiction because at least one of the
defendant's lives in this district.

PARTIES

3)   The plaintiff Andre Hunter, was incarcerated at Illinois
River Correctional Center during the events described in this
complaint.

4)   Defendant Dr. Ben Awada was a resident dentist at Illinois
River Correctional Center dental department at times relevant
to this complaint.

5)   Defendant Dr. Graciela Grammer was a dentist at Illinois
River Correctional Center dental department during times relevant
to this complaint.

6)   Defendant Seth Osafa was the medical director at Illinois
River C.C. at times relevant to this complaint.

7)   Defendant Wexford Health Sources Inc. was the health care
provider for Illinois Department of Corrections at times relevant
to this complaint.

-1-

8)    Defendant Willard Elyea was the medical director for the Illinois Department of Corrections at times relevant to this complaint.

9)    Defendant Roger Walker was the Director of the Illinois Department of Corrections at times relevant to this complaint.

10)    Defendant Barbara Hurt was the Deputy Director of District #2 at times relevant to this complaint.

11)    Defendant Terri Anderson was a member of the Administrative Review Board at times relevant to this complaint.

12)    Defendant Sherri Benton was a member of the Administrative Review Board at times relevant to this complaint.

13)    Defendant Karen Harper worked in the Illinois River dental department at times relevant to this complaint.

14)    Defendant Donald Hulick was the warden at Illinois River Correctional Center at times relevant to this complaint.

15)    Defendant Kevin Kirkbride was a grievance officer at Illinois River Correctional Center at times relevant to this complaint.

EXHAUSTION

16)    PLAINTIFF HAS EXHAUSTED ALL AVAILABLE ADMINISTRATIVE REMEDIES REGARDING THE MATTERS DESCRIBED IN THIS COMPLAINT.   COPIES OF PLAINTIFF'S GRIEVANCE AND APPEAL ARE ATTACHED TO THIS COMPLAINT.

STATEMENT OF CLAIMS

PLACE OF OCCURENCE: Illinois River Correctional Center

DATE OF OCCURENCE(S): 2000 - Present

WITNESSES TO OCCURENCE(S): Listed in this complaint

FACTS

17)    In approximately 1998 the plaintiff had root canal treatment performed on #19 tooth. The last step in root canal treatment is to fabricate a replacement crown (also known as cap) and cover the tooth.  The plaintiff has not had a replacement crown fabricated for #19 tooth. This caused the plaintiff's #19 tooth to deteriorate at a slow and, at times, immensely painful rate.

18)    While incarcerated at Illinois Department of Corrections the plaintiff was told by Dr. Awada that a crown was the proper course of action to relieve ailment which plaintiff suffered from, and save the #19 tooth.

19)    Plaintiff asked for crown and was informed by Dr. Awada that a crown would not be fabricated per I.D.O.C. policy.

-2-

20)  The plaintiff suffered from repeated perio abcesses caused by deterioration of #19 tooth.

21)  The plaintiff suffered from headaches believed to be caused by deterioration of #19 tooth.

22)  The plaintiff experienced sleep deprivation due to extreme pain caused by deterioration of #19 tooth.

23)  The plaintiff experienced changes in eating habits due to extreme pain on lower left side of mouth caused by deterioration of #19 tooth. The plaintiff experienced weight loss and fatigue due to said change in eating habits.

24)  On 7/20/01 plaintiff told Dr. Grammer that #19 tooth "bothers him sometimes."  Upon examination Dr. Grammer noted that plaintiff had root canal treatment administered on #19 tooth and scheduled operation to replace deteriorated filling.  Filling was replaced on 10/16/01.

25)  On April 13, 2004 the plaintiff went to Illinois C.C. dental department complaining of pain in #19 tooth.  Dr. Awada scheduled a redo of #19 filling.

26)  On May 4, 2004, Dr. Awada operated on the plaintiff's #19 tooth, removing the old filling and decay. Dr. Awada replaced the old filling with a new one (MOD amalgam). Dr. Awada asked the plaintiff how much time remained on his sentence.  The plaintiff responded "almost four years." Dr. Awada then told the plaintiff that because of the large filling in the #19 tooth, the plaintiff needs a crown or the tooth will continue to deteriorate.  The plaintiff then asked for the crown and Dr. Awada told the plaintiff a crown would not be fabricated because it was against I.D.O.C. policy.  Dr. Awada told plaintiff he could either get tooth extracted or keep on getting fillings until he can get out and get a crown.

27)  Approximately 10 months after plaintiff's #19 was refilled MOD amalgam began chipping away and causing pain. On 6/1/05 the plaintiff began dropping dental request slips about every 10 days requesting remedy for disintegrating filling.

28)  On 7/21/05 plaintiff saw dentist for first time since pain returned in #19 tooth.  Plaintiff asked Dr. Grammer what was wrong with his tooth. Dr. Grammer spoke rather fast with heavy accent so it was hard for plaintiff to understand her reply. Plaintiff believes Dr. Grammer stated she did not know what was causing the plaintiff's pain, but that #19 needed to be refilled.

29)  On 8/2/05 Dr. Grammer filled plaintiff's #19 tooth. Plaintiff asked Dr. Grammer if this operation would fix tooth. Dr. Grammer said she did not know.

30)  The filling plaintiff received on 8/2/05 did not fit right and prevented him from chewing properly. Plaintiff drank soupy

oatmeal and noodles because he could not chew.

31)  On 8/5/05 plaintiff told Dr. Awada that pain in #19 tooth did not cease and the pain made chewing impossible. Dr. Awada informed plaintiff that filling on #19 tooth was too high and proceeded to shave it down. Dr. Awada told plaintiff he needed a crown or he would lose #19 tooth. Plaintiff asked Dr. Awada to fabricate crown to save #19 tooth. Dr. Awada once again told plaintiff per I.D.O.C. policy, a crown would not be fabricated. Dr. Awada then told plaintiff as long as he can "manage" pain, he can continue to put off extraction and continue to receive fillings.

32)  On 10/3/05 plaintiff noticed swelling along gumline on side of #19 tooth and greater sensitivity. Plaintiff began submitting request slips about every 7 days complaining of pain and swelling.

33)  On 10/28/05 plaintiff had trouble sleeping due to pain from #19 and surrounding gumline. Plaintiff signed up for sick call but was told the dentist would not be back until 10/31/05. Plaintiff signed up for sick call on the night of 10/30/05 and was refered to the dentist on 10/31/05.

34)  On 10/31/05 Dr. Awada examined #19 tooth along with X-ray. Dr. Awada told plaintiff he had perio abcesses(localized collections of pus, formed by tissue disintegration and surrounded by an inflamed area) caused by furcation (gum) problems. Dr Awada told plaintiff he desperately needed a crown to save tooth, however, I.D.O.C. policy does not allow it. Dr. Awada prescribed antibiotic and pain reliever.

35)  In November 2005 plaintiff wrote letters to Deputy Director Barbara Hurt, Director Roger Walker, Dr. Willard Eylea, and Wexford Health Sources Inc. pointing out his ailment, the pain he was suffering, and the unconstitutional policy in effect at I.R.C.C.

36)  On 11/15/05 plaintiff informed Dr. Awada that pain around #19 tooth had not decreased since last visit. Perio abcesses increased in size. Dr. Awada recommended extraction. Plaintiff asked if tooth could be saved and Dr. Awada remarked " Yes, if you were to receive a crown." Plaintiff declined extraction. Dr. Awada prescribed antibiotics and pain reliever.

37)  On night of 11/18/05 plaintiff did not sleep due to excruciating pain from #19 tooth and surrounding gumline. Plaintiff subsequently went to sick call the following morning requesting immediate remedy. Plaintiff was given Tylenol®

38)  On 11/21/05 plaintiff told Dr. Awada that antibiotic and pain reliever had little effect and pain was still excruciating. Dr. Awada again told plaintiff a crown was needed but is not permitted per I.D.O.C. policy, and because the level of pain was no longer "manageable" extraction was the only viable option. Plaintiff agreed to extraction and asked that the operation be performed immediately. Dr. Awada told plaintiff he could only

schedule an extraction, but could not say when operation would take place. Dr. Awada prescribed antibiotic and pain reliever.

39)  On 11/28/05, because level of pain had decreased and plaintiff did not want to be disfigured, he declined offer for extraction. Plaintiff was ordered by dental staff Karen Harper to sign refusal for extraction.

40)  On 12/30/05 plaintiff informed Dr. Awada that pain from #19 tooth was affecting eating habits and asked for crown. Plaintiff was once again given a choice by Dr. Awada to receive repeated fillings or extract tooth, since crown was not permitted per I.D.O.C. policy.

41)  On 1/3/06 plaintiff filed two grievances. The first was an emergency grievance concerning inadequate medical care plaintiff had received up to this point. The second grievance had to do with illegible medical records.

42)  On 1/9/06 Warden Donald Hulick determined plaintiff's grievance was not an emergency.

43)  On 2/2/06 Dr. Awada helped plaintiff decipher medical records.

44)  Around 2/25/06, after #19 filling fell completely out of his mouth, plaintiff began experiencing sharp headaches on left side of skull. Plaintiff believes these headaches were caused by #19 tooth and began submitting requests about every 7 days requesting adequate and effective treatment.

45)  On 3/7/06 Grievance Officer Kirkbride reviewed plaintiff's grievances and recommended they be denied. Plaintiff then forwarded medical treatment grievance to Administrative Review Board.

46)  In April, 2006 defendant Barbara Hurt responded to a second letter sent by plaintiff in March 2006, stating I.D.O.C. does not approve placement of crowns, so plaintiff's only recourse is extraction.

47)  On 3/24/06 plaintiff informed Dr. Awada of missing filling and headaches. Plaintiff asked Dr. Awada if crown could still save tooth. Dr. Awada told plaintiff he did need a crown but I.D.O.C. policy would not permit it. Dr. Awada once again told plaintiff if pain is "tolerable," tooth can be refilled until release, if not, then plaintiff can opt for extraction.

48)  On 4/5/06, after being informed of situation by plaintiff via certified mail, Dr. Eylea sent plaintiff a letter stating he had reviewed plaintiff's record with I.R.C.C. Health Care Unit Health Care Administrator (Dr. Seth Osafa) and together they concluded that plaintiff's dental care has been within reasonable standards.

49)  On April 7, 2006 Sherry Benton recommended that plaintiff's grievance be denied. This recommendation was concurred by Director Roger E. Walker Jr.(signature was initialled by Terri Anderson.)

50)  On 4/7/06 plaintiff, still missing filling, saw Dr. Awada and complained of headaches believed to be caused by #19 tooth. Dr. Awada informed plaintiff that situation had been evaluated by Dr. Funk. Dr. Awada told plaintiff that he had been informed a crown was an elective procedure. Dr. Awada gave plaintiff choice between filling and extraction.

51)  On 4/21/06 plaintiff informed Dr. Awada that headaches had subsided, but #19 tooth still ached and became increasingly irritated when consuming food. Upon X-ray, Dr. Awada informed plaintiff that because he did not have a crown covering #19 filling, food particles would continue to get through cracks in tooth, causing furcation(gum) problems.

52)  5/26/06, after submitting numerous request slips complaining of varying degrees of pain from #19 tooth, plaintiff was call passed by I.R.C.C. dental department and informed by Dr. Awada, upon X-ray, that #19 tooth could not be saved and "no dentist in the world would prescribe any restorative treatment, let alone a crown." Plaintiff then requested extraction as soon as possible.

53)  On 6/12/06, after two request slips had been submitted complaining of intense pain, I.R.C.C. dental department extracted plaintiff's #19 tooth.

54)  The policy of denial of restorative care for inmates in need only serves to deny inmates their 8th Amendment rights, and, amounts to cruel and unusual punishment, especially in the case of inmates who have multiple years left on their sentence, as the plaintiff had when such violations began.

## FIRST CAUSE OF ACTION

55)  That the actions of defendants Dr. Awada, Dr. Osafa, Dr. Grammer, and Karen Harper violated the plaintiff's eighth and fourteenth Amendment rights when the defendants failed to provide the plaintiff with  adequate medical attention to his serious medical needs.

## SECOND CAUSE OF ACTION

56)  The actions of Wexford Health Sources Inc., Dr. Willard Eylea, Barbara Hurt, Terri Anderson, Sherry Benton, Donald Hulick, and Kevin Kirkbride violated the plaintiff's eighth Amendment right to be free from cruel and unusual punishment and his fourteenth Amendment right to Due Process of Law when defendants knew the plaintiff was receiving inadequate medical attention to his serious medical need and failed to intervene.

## THIRD CAUSE OF ACTION

57)  The actions of Roger E. Walker Jr. acting as director of I.D.O.C. and Dr. Willard Eylea acting as Agency Medical Director fo I.D.O.C. violated plaintiff's right to be free from cruel and unusual punishment by sustaining policies of not providing

inmates with restorative care which creates a wanton and unnecessary infliction of pain.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that the court grant the following relief:

A.    Issue a declaratory judgement stating that the actions of the defendants violated the rights of the plaintiff.

B.    Issue an injunction ordering the defendants or their agents to desist denying inmates restorative care including but not limited to crowns.

C.    Award compensatory damages jointly and severally against:

   1. Defendants Dr. Awada, Dr. Osafa, Dr. Grammer, and Karen Harper for the physical and emotional pain sustained resulting from their failure to provide adequate medical care to the plaintiff.

   2. Defendants Wexford Health Sources Inc., Dr. Willard Eylea, Barbara Hurt, Terri Anderson, Sherry Benton, Donald Hulick, and Kevin Kirkbride for emotional and physical pain and disfigurement suffered by plaintiff, resulting from defendants knowledge of inadequate medical attention and failure to intervene.

   3. Defendants Roger E. Walker Jr. and Dr. Willard Eylea for emotional and physical pain and disfigurement sustained by plaintiff, resulting from implementation and/or enforcement of policies whereby inmates are denied restorative care.

D.    Award punitive damages against defendants Awada, Grammer, Osafa, Harper, Wexford Health Sources Inc., Eylea, Hurt, Anderson, Benton, Walker Jr., Hulick, and Kirkbride.

E.    Grant such other relief as it may appear that plaintiff is entitled.

Monday, October 30, 2006

Pursuant to 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the above stated facts are true to the best of my knowledge.

Respectfully submitted,

Andre Hunter R-01100
Illinois River Correctional Center
P.O. Box 1900
Canton, IL. 61520

## TABLE OF EXHIBITS

A)    Medical description of crown and what conditions necessitate covering entire tooth surface above gumline with crown.

B)    Medical records from Illinois River Correctional Center and request slips

C)    Grievances

D)    Grievance Officer report to above grievances

E)    Letter to Warden Donald Hulick and Deputy Director Barbara Hurt

F)    Responses to letters of complaint

G)    Administrative Review Board response to grievance

## **EXHIBIT A**

**A.** Medical description of crown and what conditions
   necessitate covering entire tooth surface above gum line
   with crown. (The Columbia University College of
   Physicians and Surgeons complete Home Medical Guide; 3rd
   Revised Edition, 1995; Crown Publishers, Inc. New York)

Common Oral Problems    795

mon. They are composed of an alloy of mercury and a variety of metals in addition to silver. Recently, the conventional mixture has been markedly improved with the inclusion of additional copper.

Plastic composite materials can be matched very closely in color to the tooth, are easy to use, and do not dissolve in the mouth fluids. Composites are now strong enough for use in the back teeth, which are subject to heavy biting forces.

**Root Canal Therapy.** Root canal therapy is a multiphase procedure designed to save a badly diseased tooth.

- All traces of pulp tissue are removed from the pulp chamber and the canals.
- The canals are mechanically shaped and cleaned of all bacteria.
- The canals are carefully and completely filled, usually with a form of gutta-percha material. A perfect seal is imperative to avoid reinfection and the need to remove the tooth.

After root canal therapy, the tooth needs to be restored and protected, as the teeth can become more brittle. (See box Crowns and Bonding.)

**Extraction.** When root canal therapy is not feasible, a permanent dead tooth must be extracted. Abscessed primary teeth may be saved using a procedure called a pulpotomy, in which only the pulp is removed. If a primary tooth is extracted and the permanent tooth does not emerge for 6 months, space maintainers should be considered. The extracted tooth can be replaced with a fixed bridge, a partial denture, or an implant supported prosthesis.

Dental pain accompanied by swelling or fever is an emergency; immediate care must be sought. The family dentist, an oral and maxillofacial surgeon, dental emergency service, or hospital emergency room all should have 24-hour coverage.

## PREVENTION

Current knowledge of caries suggests a three-part strategy for prevention:

**Combating Bacteria.** Plaque with a high concentration of acid-producing bacteria (especially *Streptococcus mutans*) is necessary for caries to develop. Techniques to interfere with plaque deposit include removing the plaque through good oral hygiene practices (see box How to Brush and Floss Your Teeth, and figures 32.4 and 32.5). Still in the experimental stage are the use of antibacterial agents directed toward the microorganisms in the plaque, and a vaccine to prevent the bacteria from adhering to the teeth.

Regular toothbrushing effectively removes plaque in

those areas the brush reaches. The use of dental floss can remove plaque from between teeth. Five to 10 minutes of thorough brushing and flossing daily, supplemented by regular cleaning by a dentist or oral hygienist, can be very effective on all but the occlusal surfaces (the biting surfaces of the molars and premolars).

Plastic sealants placed on the occlusal surfaces after the teeth appear in the mouth (6 to 12 years) are effective in preventing plaque formation and enamel breakdown in this vulnerable area. Application of the sealant to the molars is quick and simple and usually takes less than an hour.

In a recent study, 95 percent of the teeth treated retained their sealants for years. In a 10-year study, sealant was completely or partially retained in 78 percent of the teeth treated. Research indicates that the use of sealants reduces decay by about 50 percent.

**Modifying the Diet.** The form and frequency of sugar ingestion is more influential on caries formation than the amount of sugar consumed. A "sweet tooth" gratified by between-meal snacks of foods high in sucrose is extremely conducive to tooth decay. Reducing overall sugar intake—of sucrose in particular—and limiting sugar to mealtimes will reduce tooth decay in most people. (See box Snack Foods That Are Not Cariogenic.)

Some foods seem to protect against caries: Cocoa and



SNACK FOODS THAT ARE NOT CARIOGENIC

| FOOD GROUP | SNACKS |
|---|---|
| Bread and cereal | Popcorn (unsalted) |
| Fruits and vegetables | All raw fruits and vegetables |
| | unsweetened juices |
| Dairy | Cheddar cheese |
| Meats and proteins | All meats |
| | Hard-boiled eggs |
| | Bean dips |
| | Nuts (unsalted) |
| Other | Sugarless gum |
| | Sugarless candy |
| | Sugarless soft drinks |
| | Coffee or tea without sugar |

Taken with sweetened foods, milk can help wash sugar from the mouth.

Because some fruits—oranges, pineapples, peaches—are very high in natural sugar, frequent fruit snacks can be damaging to the teeth (although less harmful than candy bars). Dried fruits such as raisins are sweet and stick to teeth, and should be avoided as between-meal snacks.

**796**   **MAINTAINING ORAL HEALTH**

## CROWNS AND BONDING

Several conditions necessitate covering the entire tooth surface above the gumline with a replacement crown (also known as a cap):

- To cover severe damage from decay
- To protect a tooth that has been heavily filled
- To replace thin sections of the teeth that have had root canal treatment
- To cosmetically improve front teeth that are unsightly due to decay or injury

**Crowns**

A tooth is prepared for a crown by removal of all its enamel, together with enough of the underlying dentin, to provide for a sufficiently substantial crown. Impressions (molds) are taken of the tooth, as well as of the neighboring and opposing teeth, to ensure a precise and functional fit. Gold or an alloy has been traditionally used for crowns on the back teeth, where strength is required; often with plastic or porcelain facings. On the front teeth, a combination of gold and porcelain is used to make a crown both strong and attractive (the porcelain can match the tooth color almost exactly). Increasingly, porcelain alone is used as a crown for a single tooth, since new, stronger porcelain materials are now available.

**Bonding** is an increasingly popular alternative to a crown for a tooth that is chipped, or has stains, cracks, or flaws in the enamel. Bonding takes place in three steps:

- The enamel is lightly etched with an acid solution to improve retention.
- A paste made of plastic combined with finely ground quartz, glass, or silica matched as closely as possible to the tooth color is applied in layers until the imperfection is repaired or the stain covered.
- The restoration is set or "cured" by means of a chemical process that often uses ultraviolet or visible light.

**Veneers**

In badly chipped or misshapen front teeth, for which the bonding is inadequate, thin acrylic shells or veneers can be bonded directly to the front surface of the teeth via acid etching. Unlike a crown, bonding and veneers are not permanent and the procedure may have to be repeated after several years of wear.

rice hulls, for example, contain a still unidentified anti-cariogenic substance, and phosphates in foods have similar protective qualities. Cheddar cheese eaten at the end of a meal generates a protective response, neutralizing mouth acids and helping to remineralize the tooth.

Contrary to popular belief, fibrous foods such as fruits and vegetables are not natural toothbrushes; instead, they protect by stimulating salivation, a natural mouth rinse that combats caries. Conversely, caries may become more prevalent when salivation decreases during sleep or is suppressed due to diseases of the salivary glands or as a side effect of certain drugs.

**Increasing Resistance to Decay.** The recent drop in caries among children is credited largely to fluoride supplementation or addition to drinking water, since there has been no apparent decrease in the prevalence of decay-producing bacteria and no decrease in sugar consumption. During early childhood, fluoride is incorporated into the enamel of developing teeth, modifying their crystal structure and making them more decay-resistant.

Over half the population in the United States—123 million people—drink fluoridated water (at a concentration of 1 part per million) either because the local water is naturally high in fluoride or because the municipal water supply is fluoridated. But while fluoridated communities have experienced a 50 percent decrease in caries, the wide-scale use of fluorides such as dentifrices and mouthwashes has also reduced the rate of caries by between 25 and 50 percent. It is estimated that every dollar spent on fluoridation saves $50 in dental bills.

In parts of the country without fluoridated water, fluoride can be prescribed as a dietary supplement during the period of tooth formation (that is, until about 14 years of age) and will produce a level of protection similar to that of fluoridated water. The supplement is available as drops, tablets, or a vitamin-fluoride combination. Taking the proper amount is crucial, since too much fluoride causes white spots or discolorations on teeth known as fluorosis.

- Children from birth to 2 should take 0.25 mg daily.
- Children 2 to 3 need 0.5 mg daily.
- Children 3 to 14 should take 1.0 mg/day until a year after all the permanent molars have appeared.

Pregnant women do not need to take fluoride supplements; it is in the first months of infancy that fluoride begins to help children's teeth.

The proper use of fluoride has no side effects and no effects other than dental fluorosis, or discoloration of the enamel, with elevated levels: More than 40 years of research in many countries attest to the safety and value of fluoridated water and fluoride supplements. Speculation that fluoride is responsible for cancer, birth defects, or any other condition is totally unfounded. The only rec-

**EXHIBIT B**

**B.** Medical records from Illinois River Correctional Center
and request slips



STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

Inmate/Student Name
Inmate/Student I.D.# _____
Reception Facility _____
Panorex _____

R01100  HUNTER, ANDRE M.
Age:
Race: BLK       DOB:  /  /
JRC 12/06/2000   Sex: M

12 lely at R&C

Screening
DDS slg

Public Health Classification Screening Dates

☐ Schedule Immediately at receiving Institution

Pathology

Endodontics
Oral Surgery
Periodontics
Operative
Prosthetic

Receiving Inst. I.B.C.
Dentist Gram m e l
Date 1-26-01

MEDICAL HISTORY AND REMARKS

| | Yes | No | Current Medication |
|---|---|---|---|
| Cardio Vascular Disease | | | |
| Pulmonary Disease/Asthma | | | |
| Diabetes | | | |
| Epilepsy | | | |
| Hepatitis | | | |
| V.D. (Type | | | |
| Allergies (Type | | | |

JUVENILE

Existing Restorations and Missing Teeth

R          L

Treatment Needed and Completed Restorations

R          L

TREATMENT NEEDED - COMPLETED RESTORATIONS

1  2  3  4  5  6  7  8  9  10 11 12 13 14 15 16

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

ADULT

EXISTING RESTORATIONS & MISSING TEETH

R          L

1  2  3  4  5  6  7  8  9  10 11 12 13 14 15 16

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

3:07-cv-03062-HAB-BGC   # 4   Page 14 of 32

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|------|-----------------|------------------|------|-----------------|------------------|

*(Handwritten dental record — largely illegible. Partial readings of dates in left column: 12-3-03, 12-10-02, 12-10-01, 7-30-04, 10-16-00, 2-00, 1-20-01, 4-13-04, 1-9-05, 5-11-04, 3-14-04, 7-26-05, 7-10-05, 5-1-05, 10-31-05, 9-6-05, 10-23-05, 7-5-05. Right-column dates include: 10-31-05, 11-2-05, 11-15-05, 11-1-05, 11-21-05, 11-3-05, 11-28-05, 8-8-06, among others. Handwritten service entries and D.D.S. signatures are not legibly transcribable.)*

3:07-cv-03062-HAB-BGC

# STATE OF ILLINOIS — DEPARTMENT OF CORRECTIONS

JUVENILE

Inmate/Student Name _____
Inmate/Student I.D. # _____

Reception Facility _____

Panorex _____

Screening _____
DDS sig _____

Public Health Classification Screening Dates

Endodontics
Oral Surgery
Periodontics
Operative
Prosthetic

☐ Schedule Immediately at R&C
☐ Schedule routine exam at receiving Institution
☐ Schedule Immediately at receiving Institution

Pathology

Receiving Inst. _____
Dentist _____
Date 7/1/06

ADULT

MEDICAL HISTORY AND REMARKS

| | Yes | No | Current Medication |
|---|---|---|---|
| Cardo Vascular Disease | | | |
| Pulmonary Disease/Asthma | | | |
| Diabetes | | | |
| Epilepsy | | | |
| Hepatitis | | | |
| V.D. (Type ____ ) | | | |
| Allergies (Type ____ ) | | | |

EXISTING RESTORATIONS & MISSING TEETH

R   1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17   L

TREATMENT NEEDED - COMPLETED RESTORATIONS

1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16

32 31 30 29 28 27 26 25 24 23 22 21 20 19 18 17

Existing Restorations and Missing Teeth

Treatment Needed and Completed Restorations

R ... L

| Date | Service Rendered | D.D.S. Signature | Date | Service Rendered | D.D.S. Signature |
|---|---|---|---|---|---|
| 2-28-06 | (R) Call Fill #19 PX | | | | |
| | He's having to have it removed or not | | | | |
| o/c | wants to have it | | | | |
| 4/7/06 | (R) Call for Pt. Family | Adam Shaw | | | |
| 4/25 | was told that exam | | | | |
| o/c | is reset Want to have | | | | |
| | filling w/ up | Adam Shaw | | | |
| 4.21.06 | (R) Briefly I explained | | | | |
| N.C. | He told me would | | | | |
| | put to sleep | | | | |
| | He would cost | | | | |
| | next — no | | | | |
| 4/28/06 | (R) Follow Dosle | Adam Shaw | | | |
| Yes | on w/ pt wish — | | | | |
| | fractures jacket | | | | |

DC 7126 (Rev. 10/87)
IL 426-0018

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

3:07-cv-03062-HAB-BGC    # 4    Page 17 of 32

DC7177
IL426-0432

RESIDENT REQUEST

ASSIGNMENT: BAKERY ~~BOXS~~ 6AM - 2PM          DATE: ~~6x18x05~~

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL: B    CELL: 23

I REQUEST AN INTERVIEW WITH _DENTIST_ TO DISCUSS THE FOLLOWING

HAVE A CAVITY THAT NEEDS TO BE REFILLED AS

SOON AS POSSIBLE

JUN 2005 Received Medical Office

REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: _Andre Hunter_

---

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

DC7177
IL426-0432

RESIDENT REQUEST

ASSIGNMENT: BAKERY 6AM - 2PM          DATE: 7x17x05

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL: B    CELL: 23

I REQUEST AN INTERVIEW WITH _DENTIST_ TO DISCUSS THE FOLLOWING

FILLING AND TOOTH ARE CHIPPING AND

CAUSING INCREASING PAIN. I WAS DENIED

JUL 2005 Received Medical Office

REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: _Andre Hunt_

---

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

RESIDENT REQUEST

ASSIGNMENT: ~~BAKERY~~ BAKERY 6AM - 2PM          DATE: 7x30x05

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL: B    CELL: 23

I REQUEST AN INTERVIEW WITH _DENTIST_ TO DISCUSS THE FOLLOWING

PAIN FROM TOOTH IS BECOMING UNBEARABLE

WOULD LIKE TO GET WORK DONE AS SOON AS POSSIBLE

AUG 2005 Received Medical Office

REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: _Andre Hunt_

DC7177
IL426-0432

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

RESIDENT REQUEST

ASSIGNMENT: *BAKERY 7am-3pm*

NAME: HUNTER, ANDRE M. | NUM: R01100 | HSE: 1 | GAL: | CELL:

I REQUEST AN INTERVIEW WITH *DENTST* TO DISCUSS THE FOLLOWING: *RECURRENT PROBLEM WITH FILLING LOWER LEFT SIDE*

REASON FOR INTERVIEW MUST BE COMPLETE AND CONSISE

RESIDENT SIGNATURE: *Andre Hunter*

---

## ILLINOIS RIVER CORRECTIONAL CENTER
## GENERAL HOSPITAL PRESCRIPTION
## OFFENDER MEDICAL ROUTING FORM

NAME: *Hunter, Andre*    NUMBER: *R01100*    HU# _____

ORTHO CONSULT: _____    EYE CLINIC: _____

DENTAL: X    X-RAY: _____

CHRONIC CLINICS: _____    OTHER: *Cracked tooth pain, being treated for abcess*

PSYCHOLOGIST: _____

PSYCHIATRIST: _____

NURSE SIGNATURE: *A Hunter*

MD ORDERING: _____

DATE: *11/19/05*    REASON: _____

IRI 0105 (4/2003) IL 426-15367

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

DC7177
IL426-0432                    RESIDENT REQUEST

ASSIGNMENT: BAKERY 7AM-3PM                    DATE:

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL: B    CELL:

I REQUEST AN INTERVIEW WITH DENTIST          TO DISCUSS THE FOLLOWING
PAIN TO CRACKED TOOTH IS INCREASING
AND IS AFFECTING MY EATING ~~EATING~~ HABITS,
I REQUEST REMEDY AS SOON AS
POSSIBLE

REASON FOR INTERVIEW MUST
BE COMPLETE AND CONSISE    RESIDENT SIGNATURE: Andre Hunt

---

STATE OF ILLINOIS - DEPARTMENT OF CORRECTIONS

DC7177
IL426-0432                    RESIDENT REQUEST

ASSIGNMENT: BAKERY 7AM-3PM                    DATE: -12-06

NAME: HUNTER, ANDRE M.    NUM: R01100    HSE: 1    GAL:    CELL: 23

I REQUEST AN INTERVIEW WITH DENTIST          TO DISCUSS THE FOLLOWING
I'VE BEEN GETTING HEADACHES I THINK ARE
BY AN ALREADY PAINFUL TOOTH PLEASE HELP.

REASON FOR INTERVIEW MUST
BE COMPLETE AND CONSISE    RESIDENT SIGNATURE: Andre Hunt

## **EXHIBIT C**

**C.** Illinois River Grievances(1-3-06)

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**   06-0062

| Date: 1-3-06 | Committed Person: Andre Hunter (Please Print) | ID#: #R01100 |
|---|---|---|
| Present Facility: I.R.C.C | Facility where grievance issue occurred: I.R.C.C | |

**NATURE OF GRIEVANCE:**

☐ Personal Property   ☐ Mail Handling   ☐ Restoration of Good Time   ☐ Disability
☐ Staff Conduct   ☐ Dietary   ☒ Medical Treatment   ☐ Other (specify)
☐ Transfer Denial by Facility   ☐ Transfer Denial by Transfer Coordinator

☐ Disciplinary Report: _____/_____
Date of Report      Facility where issued

Note:   Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

Complete: Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
   Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
   Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
   Chief Administrative Officer, only if EMERGENCY grievance.
   Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary
   administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief
   Administrative Officer.

Brief Summary of Grievance: I HAVE A TOOTH ON THE LOWER LEFT SIDE OF MY JAW (#19)THAT

CAUSES ME ENOUGH PAIN TO AFFECT MY EATING HABITS. BECAUSE A ROOT CANAL

TREATMENT WAS PERFORMED ON THIS TOOTH AROUND 1998, THE SHELL OF TOOTH THAT

REMAINS IS THIN, CRACKED, AND HAS HAD TO BE FILLED REPEATEDLY, TO AN

INCREASINGLY HEAVIER EXTENT. I HAVE DEVELOPED MULTIPLE ABCESSES AROUND THIS

TOOTH (#19) ON NUMEROUS OCCASIONS. THESE ABCESSES ARE EXTREMELY PAINFUL AND

MAKE IT DIFFICULT FOR ME TO CONSUME SOLID FOOD WHEN THEY DEVELOP. SINCE IT

BECAME A PROBLEM IN APRIL 2004, I HAVE VISITED THE RESIDENT DENTIST AT I.R.

C.C. H.C.U. MANY TIMES SEEKING A REMEDY FOR THIS AILMENT. I HAVE HEARD FROM

THREE DENTISTS AT I.R.C.C. H.C.U. THAT I NEED A CROWN TO COVER THIS (cont.)

Relief Requested: (1) I WANT MY GRIEVANCE REFERRED TO THE AGENCY MEDICAL DIRECTOR

(2) THAT I RECEIVE ADEQUATE MEDICAL ATTENTION AS I AM ENTITLED UNDER THE

8th AMENDMENT

☒ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_Andre Hunt_   R-01100   1, 3, 06
Committed Person's Signature      ID#      Date

(Continue on reverse side if necessary)

---

**Counselor's Response (if applicable)**

Date Received: 1, 13, 06   ☐ Send directly to Grievance Officer   ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277

Response: DISCUSSED ISSUE INMATE STATES he thinks he
DID NOT GET ADEQUATE MEDICAL TREATMENT FOR his sore
tooth. FORWARD COPY TO STAFF FOR RESPONSE +
ORIGINAL to G.O.

_Jay Sheplar_   _Jay Sheplar_   1, 17, 06
Print Counselor's Name      Counselor's Signature      Date of Response

---

**EMERGENCY REVIEW**

Date Received: 1, 9, 06   Is this determined to be of an emergency nature?   ☐ Yes; expedite emergency grievance
   ☒ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner.

RECEIVED
JAN 10 2006

_Arnold Hulick_   GRIEVANCE OFFICER   1, 9, 06
Chief Administrative Officer's Signature      Date

Distribution: Master File; Committed Person      Page 1      DOC 0046 (Eff.10/2001)
(Replaces DC 5657)

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE** (Continued)

PROBLEMATIC TOOTH; AND WERE I TO RECEIVE A CROWN ON #19, THE COMPLICATIONS WITH SAID TOOTH WOULD MOST LIKELY CEASE. AFTER REQUESTING THIS TREATMENT (ALSO KNOWN AS CAPPING), I WAS TOLD BY THESE DENTISTS THAT THEY CANNOT ISSUE CROWNS, AND MY ONLY OPTION FOR RELIEF WAS EXTRACTION OF #19. ACCORDING TO THE COLUMBIA COLLEGE OF PHYSICIANS AND SURGEONS COMPLETE HOME MEDICAL GUIDE(3rd REVISED ED.) "SEVERAL CONDITIONS NECESSITATE COVERING THE ENTIRE TOOTH SURFACE ABOVE THE GUMLINE WITH A REPLACEMENT CROWN:

　°TO PROTECT A TOOTH THAT HAS BEEN HEAVILY FILLED

　°TO PROTECT THIN SECTIONS OF THE TEETH THAT HAVE HAD ROOT CANAL THERAPY
THE NEW COMPLETE MEDICAL AND HEALTH ENCYCLOPEDIA VOL. 3 SHOWS THAT THE LAST STEP IN ROOT CANAL THERAPY IS TO CAP THE TOOTH. (SEE ATTACHMENT, p.732 step (4). THE PAIN TO MY TOOTH BEGAN IN 2004 AS A SLIGHT ACHE THAT WOULD COME AND GO. THIS IS THE FIRST TIME THE DENTISTS AT I.R.C.C. H.C.U. TOLD ME THAT I NEEDED A CROWN, BUT THEY COULD NOT GIVE ME ONE. SINCE THEN I HAVE BEEN BACK AND FORTH TO THE I.R.C.C. H.C.U. EACH VISIT I COMPLAINED OF GREATER PAIN AND EACH VISIT I WAS TOLD EXTRACTION WAS THE ONLY REMEDY AVAILABLE. AFTER TOOTH #19 WAS FILLED A SECOND TIME I BEGAN DEVELOPING ABCESSES THAT CAUSED ME SEVERE PAIN, DAY AND NIGHT. IT WAS THIS EXCRUCIATING PAIN THAT LEAD ME TO ACCEPT THE DENTIST'S OFFER TO EXTRACT #19. I THEN LEARNED THAT THE DENTIST's AND/OR HPL's DENIAL OF TOOTH-PRESERVING TREATMENT CONSTITUTES DELIBERATE INDIFFERENCE TO MY SERIOUS DENTAL NEED. DENTAL CONDITIONS ARE DEEMED SERIOUS IF THEY "CAUSE PAIN, DISCOMFORT, OR THREAT TO GOOD HEALTH." (DEAN V. COUGHLIN, 623 F. supp. at 404) I HAVE ALREADY COMMUNICATED THE PAIN AND DISCOMFORT I HAVE FELT AND STILL FEEL AT THIS MOMENT. RECURRING ABCESSES POSE A THREAT TO MY GOOD HEALTH IN THAT THEY CAN GROW INORDINATELY LARGE AND BURST, CAUSING THE PUS TO ENTER MY BLOOD STREAM AND ACT AS POISON. I.R.C.C. H.C.U. DENTIST'S AND/OR HPL's DENIAL OF PROVIDING A CROWN IS A VIOLATION OF MY 8th AMENDMENT RIGHT TO MEDICAL CARE. (MEDICAL CARE IS DEEMED A BASIC HUMAN NEED, THUS DENIAL AND DEPRIVATION OF THIS BASIC HUMAN NEED CONSTITUTES A VIOLATION OF THE 8th AMENDMENT, WHICH PROHIBITS "UNQUESTIONED AND SERIOUS DEPRIVATIONS OF BASIC HUMAN NEEDS" [RHODES V. CHAPMAN 452 U.S. at 347; accord, WILSON V. SEITER, 501 U.S. 294, 111 S.ct 2321, 2324 (1991)]. SECTION 4.6 (a) OF HPL's CONTRACT WITH THE STATE OF ILLINOIS READS "ALL MEDICAL SERVICES SHALL BE PROVIDED ACCORDING TO MEDICALLY ACCEPTED COMMUNITY STANDARDS OF CARE." I FEEL I HAVE PROVEN THAT A CROWN IS THE MEDICALLY ACCEPTED COMMUNITY STANDARD OF CARE FOR THE AILMENT FROM WHICH I SUFFER. I ALSO FEAR THAT AS RESULT OF I.R.C.C. H.C U.'s INADEQUATE DENTAL CARE, MY TOOTH (#19) MAY HAVE ALREADY DETERIORATED TO THE POINT OF REQUIRING EXTRACTION. I REFUSED EXTRACTION BECAUSE THERE MAY BE A CHANCE MY TOOTH CAN BE SAVED, AND THE EXTREME PAIN RELIEVED.

ILLINOIS DEPARTMENT OF CORRECTIONS
**COMMITTED PERSON'S GRIEVANCE**    06-___    0140    1623

| Date: 1-3-06 | Committed Person: (Please Print) Andre Hunter | ID#: R-01100 |
|---|---|---|
| Present Facility: I.R.C.C. | Facility where grievance issue occurred: I.R.C.C. | |

**NATURE OF GRIEVANCE:**    Med - other (legible records)

- ☐ Personal Property
- ☐ Staff Conduct
- ☐ Transfer Denial by Facility
- ☐ Disciplinary Report: ____/____/____
  Date of Report

- ☐ Mail Handling
- ☐ Dietary
- ☐ Transfer Denial by Transfer Coordinator

- ☐ Restoration of Good Time
- ☐ Medical Treatment

- ☐ Disability
- ☒ Other (specify): LEGIBLE MED. RECORDS

Facility where issued

**Note:** Protective Custody Denials may be grieved immediately via the local administration on the protective custody status notification.

**Complete:** Attach a copy of any pertinent document (such as a Disciplinary Report, Shakedown Record, etc.) and send to:
Counselor, unless the issue involves discipline, is deemed an emergency, or is subject to direct review by the Administrative Review Board.
Grievance Officer, only if the issue involves discipline at the present facility or issue not resolved by Counselor.
Chief Administrative Officer, only if EMERGENCY grievance.
Administrative Review Board, only if the issue involves transfer denial by the Transfer Coordinator, protective custody, involuntary administration of psychotropic drugs, issues from another facility except personal property issues, or issues not resolved by the Chief Administrative Officer.

**Brief Summary of Grievance:** On 12-15-05 I went to I.R.C.C. H.C.U. to request copies of my medical records. On 12-21-05 I received said copies. Pursuant to HPL contract section 4.15 (b) "Contractor shall ensure that medical records are complete and filed promptly and contain accurate legible entries." My dental records are essentially illegible. I am grieving this fact.

**Relief Requested:** (1) I request that H.C.U. provide me the means to decipher the illegible hand-writing in my medical records.

(2) That in the future my medical records contain legible entries.

☐ Check only if this is an EMERGENCY grievance due to a substantial risk of imminent personal injury or other serious or irreparable harm to self.

_____    _____    ____/____/____
Committed Person's Signature    ID#    Date

(Continue on reverse side if necessary)

| | **Counselor's Response** (if applicable) | |
|---|---|---|
| Date Received: 1, 13, 06 | ☐ Send directly to Grievance Officer | ☐ Outside jurisdiction of this facility. Send to Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277 |

Response: DISCUSSED ISSUE. INMATE STATED HE CAN NOT READ COPIES FROM HCU. AND WOULD LIKE NEW COPIES. FORWARD COPY TO STAFF FOR RESPONSE + WIGNOT TO C.O.

JAY SHEPTOR                    Jay Shepl    1, 17, 06
Print Counselor's Name        Counselor's Signature    Date of Response

| | **EMERGENCY REVIEW** | |
|---|---|---|
| Date Received: ____/____/____ | Is this determined to be an emergency nature? | ☐ Yes; expedite emergency grievance ☐ No; an emergency is not substantiated. Committed person should submit this grievance in the normal manner. |

RECEIVED
JAN 1 1 2006
GRIEVANCE OFFICER

_____    ____/____/____
Chief Administrative Officer's Signature    Date

Distribution: Master File; Committed Person    Page 1    DOC 0046 (Eff.10/2001)
(Replaces DC 5657)
Printed on Recycled Paper

## EXHIBIT D

**D.** Grievance Officer report to above grievances (1-10-06)

ILLINOIS DEPARTMENT OF CORRECTIONS
**RESPONSE TO COMMITTED PERSON'S GRIEVANCE**                    1B23

| Grievance Officer's Report |
|---|

**Date Received:** 1/10/06        **Date of Review:** 3/7/06        **Grievance #:** 06-0062/0140

**Committed Person:** Andre Hunter    1B23                    **ID#:** R01100

**Nature of Grievance:** Medical Treatment: The offender grieves lack of dental treatment.

**Facts Reviewed:** The complaint and grievance fact sheet was reviewed.

Offender alleges that he has a problem tooth that causes enough pain to affect his eating habits. The offender claims a root canal was done leaving the tooth thin and cracked and causes it to have to be repeatedly filled. The offender claims that this has caused him to get abscesses around the tooth that cause severe pain making it difficult to eat solid food. The offender states he has visited the dentist several times and has been told that a crown is needed but IRCC will not do what is needed and has advised extraction. The offender claims that denial of the needed crown is a violation of his 8th amendment rights to medical care. The offender also grieves getting copies of his medical record that are not legible.

Dr. Awada responds: The offender has been seen several times to restore his fillings due to fractures The offender was advised that a crown was needed but couls not be done in the Department of Corrections per A.D. 04.03.102, 8b. The offender has also been seen several times for abscesses around the tooth due to lack of good contact (large filling) and furcation problems (gum problems) which promoted the recommendation of extraction. The offender refused the tooth removal. The only treatment remains the extraction of the tooth since DOC will not allow a crown per A.D..

Based upon a total review of all available information and a compliance check of the procedural due process safeguards outlined in Department Rule 504, this Grievance Officer is reasonably satisfied that staff misconduct cannot be substantiated and recommends that the offender's grievance be denied.

**Recommendation:** Grievance Denied

Kevin N. Kirkbride, CLAS II
_Print Grievance Officer's Name_                    _Grievance Officer's Signature_
(Attach a copy of Committed Person's Grievance, including counselor's response if applicable)

| Chief Administrative Officer's Response |
|---|

**Date Received:** March 8, 2006        ☑ I concur    ☐ I do not concur    ☐ Remand

**Comments:**

_Chief Administrative Officer's Signature_                    March 8, 2006
                                                                    _Date_

| Committed Person's Appeal To The Director |
|---|

I am appealing the Chief Administrative Officer's decision to the Director. I understand this appeal must be submitted within 30 days after the date of the Chief Administrative Officer's decision to the Administrative Review Board, P.O. Box 19277, Springfield, IL 62794-9277. (Attach a complete copy of the original grievance, including the counselor's response, if applicable, and any pertinent documents.)

_Committed Person's Signature_        R-01100        3-14-06
                                          _ID#_          _Date_

## EXHIBIT E

**E.** Letter to Warden Donald Hulick and Deputy Director
Barbara Hurt (March 6, 2006)

Andre Hunter #R01100
P.O. BOX 1900
Canton, IL 61520


March 6, 2006                              RE:VIOLATION OF D.R
                                              504.840 and A.D
                                              04.01.114(G)


Barbara Hurt
Deputy Director Dist#2
Sheridan Correctional Center
4017 E. 2603 Road
Sheridan, IL 60551

Dear Director Hurt:

In January of 2006 I filed an emergency grievance concerning
inadequate health care (dental). To this date I have heard
nothing. Per A.D. 04.01.114 (G2) the warden has three days
to respond to an emergency grievance.  The warden must do one
of the following:(1) Treat the grievance as an emergency or
(2) Notify me in writing  that the grievance is not an
emergency and explain why.

The grievance was received by the Wardens Office.  My situation
required immediate attention.  I was and still am suffering
from a toothache.  My tooth needs a crown and the dentist is
refusing to give me a crown.  He states that Wexford does not
provide inmates with crowns because crowns are cosmetic dentistry.
He also explained that this  is consistent with I.D.O.C. policy
(even though he could not cite the policy).

If there is such a policy Please take notice that it would be
tantamount to violating my  8thAmendment Right. I am asking
that you take the necessary action to protect my constitutonal
right to adequate health care.  Also I would ask that you
instruct the institutionto follow the D.Rs and A.Ds in handling
my grievance.

I look forward on hearing from you concerning this matter.  My
goal of filing a grievance was to exhaust my administrative
remedies and afterward seek for injunctive relief where I can
receive adequate care.


                                      Sincerely,

                                      André Hunter

c.c: Warden Hulick

**EXHIBIT F**

**F.** Responses to letters of complaint (Barbara Hurt, March 15, 2006; Willard Eylea, April 5, 2006)

# Illinois
## Department of
# Corrections

**ROD R. BLAGOJEVICH**
Governor

**Roger E. Walker Jr.**
Director

James R. Thompson Center / 100 W. Randolph Street / Suite 4-200 / Chicago, IL 60601 / Telephone: (312) 814-3017 / TDD:
(800) 526-0844

April 5, 2006

Mr. Andre Hunter
Register #R-01100
P. O. Box 1900
Canton, Illinois 61520

Dear Mr. Hunter:

Thank you for your letter concerning your dental care while you are currently housed at
Illinois River Correctional Center. I reviewed your dental record with the health care unit
administrator at Illinois River and the record is clear that you have seen a dentist a
number of times. I also reviewed your record with a dental consultant who informed me
that based on your dental findings, extraction is the treatment of choice. Your anatomical
findings preclude any treatment other than extraction. As mentioned in your medical
record you have refused this extraction.

Your dental care has been well within reasonable and acceptable standards and I trust this
letter is responsive to your concerns.

Sincerely,

Willard O. Elyea, M.D.
Agency Medical Director
Illinois Department of Corrections

WOE: dva

cc:     File
        Chron

**Illinois**
Department of
**Corrections**

**Rod R. Blagojevich**
Governor

**Roger E. Walker Jr.**
Director

District 2 Deputy Director / Sheridan Correctional Center / 4017 E. 2603 Road / Sheridan, IL 60551 / Telephone:  (815) 496-2181 / TDD:  (800) 526-0844

March 15, 2006

Andre Hunter, R01100
Illinois River Correctional Center
P.O. Box 1900
Canton, IL  61520

Dear Mr. Hunter:

Your March 6, 2006 letter concerning dental care at Illinois River Correctional Center has been reviewed.

The Illinois Department of Corrections does not approve placement of a "permanent prosthesis".  Dental crowns fall into this category.  The Department provides only for removal dental prosthetics as determined clinically necessary by the dentist.  Therefore, your only recourse is to have the tooth extracted.

Your grievance was deemed not of an emergency nature per Warden Hulick on January 9, 2006 and it would seem the handling of your grievance was in accordance with established guidelines being within the 60 day period.

I trust this addresses your concerns.

Sincerely,

Barbara A. Hurt, Deputy Director
District #2

cc:    Warden Hulick, Illinois River CC
        Masterfile – R01100
        File

# **EXHIBIT G**

**G.** Administrative Review Board response to grievance (April 3, 2006)

**Illinois**
Department of
**Corrections**

Rod R. Blagojevich
Governor

Roger E. Walker Jr.
Director

1301 Concordia Court / P.O. Box 19277/ Springfield, IL 62794-9277 / Telephone: (217) 522-2666 / TDD: (800) 526-0844

April 3, 2006

Andre Hunter
Register No. R01100
Illinois River Correctional Center

Dear Mr. Hunter:

This is in response to your grievance received on March 17, 2006, regarding Medical (Requesting Tooth #19 be Crowned) and Staff Conduct (Dental Staff), which was alleged to have occurred at Illinois River Correctional Center. This office has determined the issue will be addressed without a formal hearing.

This office has reviewed your written grievance dated January 3, 2006 regarding the above issue and claims that had staff properly treated you originally, your tooth (#19) would not need a possible extraction.

The Grievance officer's report (06-0062/0140) and subsequent recommendation dated March 7, 2006 and approval by the Chief Administrative Officer on March 8, 2006 have been reviewed.

This office notes that the Grievance officer has provided two grievance numbers on their report. This usually suggests that two of the offender's grievances have been combined. However, Offender Hunter has only submitted one grievance to this office.

Per the Grievance officer's response, Dr. Awada was contacted and provided a response, which this office reviewed.

Based on a total review of all available information, it is the opinion of this office that the issue was appropriately addressed by the institutional administration. It is, therefore, recommended the grievance be denied.

FOR THE BOARD: _____
Sherry Benton
Administrative Review Board
Office of Inmate Issues

CONCURRED: _____
Roger E. Walker Jr.
Director

cc:    Acting Warden Austin Randolph, Illinois River Correctional Center
Andre Hunter, Register No. R01100