UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANDRE HUNTER,
　　　　Plaintiff,

　　vs.　　　　　　　　　　　　　　　　07-3062

DR. BEN AWADA, et.al.,
　　　　Defendants.

**SUMMARY JUDGEMENT ORDER**

　　　　This cause is before the court for consideration of the defendants' motions for summary judgement. [d/e 51, 52]

I. BACKGROUND

　　　　The pro se plaintiff filed his complaint pursuant to 42 U.S.C. §1983 against 13 defendants at the Illinois River Correctional Center including: Dr. Ben Awada; Dr. Graciela Grammar; Dr. Seth Osafa; Dr. Williard Elyea;  Illinois Department of Corrections (herein I.D.O.C) Deputy Director Barbara Hunt;  I.D.O.C. Director Roger Walker; Administrative Review Board Members Terri Anderson and Sherry Benton; Dental Assistant Karen Harper; Warden Donald Hulick; Grievance Officer Kevin Kirkbride and Wexford Health Sources.

　　　　On March 30, 2007, the court found that the plaintiff had adequately alleged that the defendants were deliberately indifferent to his serious medical (dental) needs. *See* March 30, 2007 Text Order.  On February 7, 2008, Defendants Harper, Wexford, Awada, Grammar, Osafa filed a motion for summary judgment. [d/e 51]  On February 8, 2008, the remaining I.D.O.C. defendants also filed a motion for summary judgment. [d/e 52].  The plaintiff filed a response to the first motion for summary judgement, but did not respond to the second motion. [d/e 56]

II. FACTS

　　　　The plaintiff did not respond to the defendants statement of undisputed facts.  The following facts are therefore taken from the dispositive motion and response along with attached affidavits and exhibits.

　　　　The plaintiff had a root canal on his #19 tooth in 1998. (Def. Memo, Plain. Depo, p. 42). The dentist who performed the root canal did not put a cap or crown on the plaintiff's tooth after the procedure. (Def. Memo, Plain. Depo. p. 42-43).   The plaintiff entered the Illinois Department of Corrections sometime in December of 2000.

　　　　Dr. Graciela Grammar is a Doctor of Dental Surgery and has worked as a dentist since 1976.  From 2000 to 2005, Dr. Grammar worked as a part-time dentist at two correctional centers including the Illinois River Correctional Center.  The plaintiff was one of the doctor's

patients during this time frame.

Dr. Ben Awada is also a Doctor of Dental Surgery and began provided dental services within the Illinois Department of Corrections in 1995.  Dr. Awada currently works as the only dentist at Illinois River Correctional Center.   The plaintiff was one of Dr. Awada's patients.

Karen Harper is a dental assistant and she does not make any decisions with regard to patient care, nor can she contradict or change care provided by the licensed dentists. (Def. Memo, Harper Aff. p. 1)

The dentists say there are approximately 2000 inmates at Illinois River Correctional Center and more than sixty percent enter prison with serious dental problems. (Def. Memo, Awada Depo., p. 1) The doctors also state that often prisoners have had no access to dental services prior to prison. (Def. Memo, Gram. Depo, p. 2)

Dr. Seth Osafo was the Medical Director at Illinois River Correctional Center.  Dr. Osafo says he is not a dentist and does not have any control or direction in the treatment of dental problems other than as a temporary provider until a patient can be seen by a dentist. Consequently, Dr. Osafo says he did not personally examine the plaintiff for tooth pain, but did personally examine the plaintiff for a variety of other reasons. (Def. Memo, Osafo Depo, p. 1, 3)

Dr. Grammar saw the plaintiff on October 16, 2001 and put a filling into the plaintiff's #19 tooth.  The doctor says she believes the filling was the appropriate treatment for the plaintiff at the time. (Def. Memo, Gram. Depo, p. 2)

On April 13, 2004, Dr. Awada gave the plaintiff his two-year dental examination. Afterwards, the doctor made an appointment for follow-up work on the plaintiff's #19 tooth.

On May 4, 2004, the plaintiff returned to the dental clinic and X-rays were taken of his teeth.  Dr. Awada removed an old filing and decay from tooth #19 and replaced the filing.  Dr. Awada says it was his belief that this was the appropriate care for the plaintiff. (Def. Memo, Awada Depo. p. 2)

Dr. Grammar saw the plaintiff again on July 21, 2005.   The plaintiff was complaining of pain to tooth #19.  Dr. Grammar determined that the plaintiff needed another filing and scheduled the plaintiff for a follow-up visit on August 2, 2005.  Dr. Grammar placed a new filling in the plaintiff's tooth at the follow-up visit.  Dr. Grammar again states that she believes this was the correct treatment for the plaintiff "based upon the complaints he was having at the time." (Def. Memo, Gram. Depo., p. 2).

On August 5, 2005, the plaintiff returned to the dental clinic because the recent filling he received in his tooth #19 was too high.  Dr. Awada re-shaped the filling. (Def. Memo, Awada Depo. p. 2).

On October 13, 2005, the plaintiff saw the plaintiff for pain and swelling near his teeth #18 and #19.

I determined that he had an abscess, and treated him for the abscess.  I explained to Mr. Hunter proper dental care techniques, and attempted to impress upon him the importance of daily cleaning. (Def. Memo, Awada Depo, p. 2).

On November 2, 2005, the plaintiff put in a request to be seen by a dentist, but he was not scheduled for an appointment because he was seen by Dr. Awada on October 31, 2005.

Dr. Awada saw the plaintiff again on November 15, 2005, when he complained of pain and swelling again near his #18 and #19 teeth.  The doctor again treated the plaintiff and instructed him on the proper cleaning techniques. (Def. Memo, Awada Depo., p. 3).

On November 19, 2005, the plaintiff reported to the Health Care Unit with tooth pain. The plaintiff told the nurse that the pain started during the night.   The plaintiff was given Tylenol and referred to the dentist.

On November 21, 2005, the plaintiff returned to the dental clinic.  Dr. Awada observed that the plaintiff "now had a different infection in a different location, and this time, with a pus discharge." (Def. Memo, Awada Depo, p. 3) The plaintiff received an antibiotic and Motrin for discomfort.  The plaintiff also asked to have tooth #19 extracted, so an appointment was scheduled.

However, on November 28, 2005, the plaintiff refused the scheduled extraction of tooth #19 and signed the refusal of service form.  On December 30, 2005, the plaintiff came back to the dental clinic and "demanded that a crown be fabricated for his tooth." (Def. Memo, Awada Depo, p. 3).  Dr. Awada says:

> Crowns are, generally, a treatment option for decayed or fractured teeth.   Crowns are not, however, the only treatment option for a decayed or fractured tooth.  Decayed or fractured teeth may be extracted, as had been scheduled for Mr. Hunter.  A build up (filling) of the tooth, as was provided by the dentist who performed the root canal on Mr. Hunter prior to his incarceration, is another treatment option.  Build ups were also provided to Mr. Hunter several times while he was at the Illinois River Correctional Center.  Although a crown would have been an appropriate treatment option when the root canal was originally performed on Mr. Hunter prior to his incarceration, it was no an appropriate treatment option on December 30, 2005, due to the infection. I also informed Mr. Hunter that a crown was not available as a treatment option per Illinois Department of Corrections policy. (Def. Memo, Awada Depo, p. 3)

Dr. Awada says the plaintiff filed a grievance expressing confusion about his dental care, so on February 2, 2006, Dr. Awada asked the plaintiff to come in so he could go over his dental chart.  "I explained to Mr. Hunter that a crown was contraindicated at this time." (Def. Memo, Awada Dep. P. 4)

On March 24, 2006, Dr. Awada saw the plaintiff after he lost the filing in tooth #19.  The doctor says he discussed the need for the plaintiff to have the tooth extracted, but the plaintiff refused.  The doctor saw the plaintiff again on April 7, 2006, and the doctor explained that "the

only option at that time (other than the previously recommended extraction) was to have a filling build-up on his #19 tooth. (Def. Memo, Awada Aff. p. 4)

The plaintiff had his two year dental examination on April 21, 2006.  Dr. Awada examined the plaintiff and X-rayed his teeth.  The doctor says he told the plaintiff tooth #19 was badly decayed and needed to be extracted.  "A crown would not have been an appropriate treatment." (Def. Memo, Awada Aff. p. 4)

On May 13, 2006, the plaintiff failed to show for a scheduled appointment to have his tooth filled and have his dental chart explained to him.  The plaintiff was more than an hour late for his appointment, and when he was called to the dental clinic, he signed a refusal of dental services form. (Def. Memo, Awada Aff. p. 4)

At his May 26, 2006 appointment, Dr. Awada says he again explained the plaintiff's dental charts to him and the plaintiff again requested an extraction of tooth #19.  It was scheduled for June 12, 2006, and performed on this date.

Dr. Grammar says:

A "Crown is a permanent prosthetic that is not available as a treatment option within the Illinois Department of Corrections, per Department policy.  Inmates with the Illinois Department of Corrections are provided other treatment options, however, such as extraction or a build up (filling). (Def. Memo, Gram. Depo, p. 3)

Dr. Grammar says it is her medical opinion that the "treatment that Andre Hunter received at Illinois River Correctional center was appropriate and no other dental treatment was necessary." (Def. Memo, Gram. Depo., p. 3)

Dr. Awada says:

At no point during my treatment of Mr. Hunter, was a crown a necessary medical treatment for his tooth number 19, nor, due to the bifurcation problem of the tooth, would a crown have preserved the tooth from extraction.  Moreover, at all times during my treatment of Mr. Hunter, a crown was an elective procedure which is not authorized by the Illinois Department of Corrections. (Def. Memo, Awada Depo, p. 5)

Donald Hulick was the Warden at Illinois River Correctional Center from August 1, 2005 to March 31, 2006.

On January 3, 2006, the plaintiff wrote a grievance claiming that he had not received adequate dental care and it was impacting his ability to eat.  The plaintiff stated he needed a crown for his tooth.   Warden Hulick determined that the grievance was not an emergency on January 9, 2006.

On March 7, 2008, Grievance Officer Kevin Kirkbride responded to the plaintiff's

grievance.   Kirkbride asked Dr. Awada to respond.   The grievance states:

> The offender has been seen several times to restore his fillings due to fractures.
> The offender was advised that a crown was needed but could not be done in the
> Department of Corrections per A.D. 4.03.102, 8b.  The offender has also been
> seen several times for abscesses around the tooth due to lack of good contact
> (large filling) and furcation problems (gum problems) which promoted the
> recommendation of extraction.  The offender refused the tooth removal. The
> only treatment remains the extraction of the tooth since DOC will not allow a crown per
> A.D.  (Def. Memo, Ex. C)

On March 8, 2006, Warden Hulick's designee agreed with the denial of the grievance.
Sherry Benton of the Administrative Review Board reviewed the plaintiff's appeal of his
grievance and denied the appeal.

## III. LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there is no genuine issue as to any material fact
and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Any
discrepancies in the factual record should be evaluated in the nonmovant's favor.  *Anderson v.
Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144,
158-59 (1970)).  The party moving for summary judgment must show the lack of a genuine issue
of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Only disputes over facts
that might affect the outcome of the suit under the governing law will properly preclude the entry
of summary judgment."  *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must
show what evidence it has that would convince a trier of fact to accept its version of events.
*Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000).  A party opposing
summary judgment bears the burden to respond, not simply by resting on its own pleading but by
"set[ting] out specific facts showing a genuine issue for trial."  *See* Fed. R. Civ. P. 56(e).   In
order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the
material facts."  *Matsushita Elec. Ind. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  "If
[the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be
entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that
would be admissible in evidence."  Fed. R. Civ. P. 56(e) (emphasis added).  Personal knowledge
may include inferences and opinions drawn from those facts.  *Visser v. Packer Eng. Assoc., Inc.*,
924 F.2d 655, 659 (7th Cir. 1991).  "But the inferences and opinions must be grounded in
observation or other first-hand personal experience.  They must not be based on flights of fancy,
speculations, hunches, intuitions or rumors remote from that experience."  *Visser*, 924 F.2d at
659.

## IV. ANALYSIS

The medical defendants argue that the plaintiff cannot demonstrate that they were deliberately indifferent to his medical condition.   The plaintiff must pass both an objective and a subjective test in order to establish that the defendants violated the Eighth Amendment.   *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991).  The first prong of the test requires the plaintiff to demonstrate that the alleged deprivation was sufficiently serious. *Id*.  The second prong requires the plaintiff to show that the defendants acted with deliberate indifference.   *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42)  Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987).  In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The plaintiff has not demonstrated that the defendants were deliberately indifferent to his tooth problems.  He was not denied medical care, he was given the option of having his tooth filled or extracted.  Eventually, the only recommended treatment was to have the tooth extracted. The plaintiff chose to refuse this treatment for several months.

"A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v DeTella*, 95 F.3d 586, 592 (7th Cir. 1996); *See also Williams v Fishburn*, 1998 WL 748285 (N.D. Ill.  Sept. 25, 1998)(administrative directive does not allow cosmetic surgery such as a crown, so extraction was the only viable option, disagreement with treatment not constitutional violation); *Levy v. State of Illinois Department of Corrections,* 1997 WL 112833(N.D. Ill. Mar. 11, 1997)(that an earlier filling did not hold did not automatically entitled plaintiff to more expensive treatment).  The medical defendants' motion for summary judgment is granted. [d/e 51]

While the plaintiff has not responded to the I.D.O.C. defendants motion for summary judgement, these defendants were not medical professionals.  They responded to the plaintiff's grievance, asked medical personnel to respond to the plaintiff's claims and reasonably deferred to medical professionals' opinions.  Prison officials violate the Eighth Amendment only when they knowingly disregard an objectively serious risk to an inmate's health. *Greeno v Daley,* 414 F.3d 645, 652-53 (7th Cir. 2005).  Therefore, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official....will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004); *see also Johnson v. Doughty,* 433 F.3d 1001 (7th Cir. 2006).  The motion for summary judgement by the I.D.O.C. defendants is also granted.

**ITS IS THEREFORE ORDERED that:**

**1) The defendants' motions for summary judgement are granted pursuant to  Fed. R. Civ. P. 56. [d/e 51, 52]   The clerk of the court is directed to enter judgment in favor of the defendants in accordance with this order.  The parties are to bear their own costs.  This case is terminated.**

**2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).**

**3) The plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.  Release from incarceration does not relieve the plaintiff of his obligation to pay the filing fee in full.**

Entered this 8th day of September, 2008.


                        s\Harold A. Baker
        _____
                        HAROLD A. BAKER
                  UNITED STATES DISTRICT JUDGE